**DEPARTMENT OF EDUCATION, STATE OF HAWAII,**
**Plaintiff,**

v.

**Ramona RODARTE, by Lisa CHAVEZ, her mother, Defendants.**

**Ramona Rodarte, by Lisa Chavez, her mother, Plaintiffs,**

v.

**Department of Education, State of Hawaii, Defendant.**

**No. Civ. 98–931 ACK.**

United States District Court, D. Hawaii.

Feb. 1, 2000.

Matthew C. Bassett, The Protection and Advocacy Agency of Hawaii, Honolulu, HI, for Plaintiff.

Steven K. Chang, Department of the Attorney General, Employment Law Division, Honolulu, HI, Russell A. Suzuki, Department of the Attorney General, Ed-

ucation Division, Honolulu, HI, for Defendants.

## ORDER DENYING AND DISMISSING THE DEPARTMENT OF EDUCATION'S MOTION FOR SUMMARY JUDGMENT, DENYING THE DEPARTMENT OF EDUCATION'S MOTION TO DISMISS, AND GRANTING RAMONA RODARTE'S MOTION FOR SUMMARY JUDGMENT

KAY, District Judge.

### BACKGROUND

This consolidated[1] action consists of an appeal and a request for attorneys' fees and costs from an administrative hearing decision rendered in a due process hearing brought under the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* The dispute is between the Department of Education of the State of Hawaii ("DOE") and a disabled student, Ramona Rodarte, and her mother, Lisa Chavez (the Court will refer to the student as "Ramona" and the student and her mother collectively as "Rodarte"). The DOE and Rodarte both filed complaints with this Court following the hearing officer's decision; the actions were consolidated and cross motions for summary judgment and a motion to dismiss are now before this Court.

A brief discussion of how the IDEA works will help make the facts and procedural background in this case more understandable. The IDEA guarantees all handicapped children a "free appropriate public education" ("FAPE"). 20 U.S.C. § 1400(d)(1)(A) & 1412(a)(1)(A).[2] According to the IDEA, a FAPE encompasses "special education and related services designed to meet [disabled students'] unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A); *see also* 20 U.S.C. § 1401(8). There is an affirmative obligation on schools to identify and evaluate students who are eligible for special education. 20 U.S.C. § 1412(a)(3). The special education needs of each child must be individually tailored to meet his or her unique needs by means of an Individualized Education Program ("IEP"). *See generally* 20 U.S.C. § 1401(a)(20).[3] The IEP is developed with the participation of school officials, parents, and other persons knowledgeable about the child. *See* 34 C.F.R. § 300.344.[4] If a parent disagrees with the contents of an IEP, that parent may challenge the contents thereof by demanding an administrative due process hearing. *See* 20 U.S.C. § 1415(f). At the conclusion of the administrative proceeding, any party dissatisfied with the administrative decision may seek judicial review in the federal or state courts. *See* 20 U.S.C. § 1415(i)(2)(A) & (3); 34 C.F.R. § 300.512. Additionally, if the parent of the disabled child is the prevailing party in a proceeding brought under § 1415, a court has discretion to award attorneys' fees and costs. 20 U.S.C. § 1415(i)(3)(B). This action comes before this Court as such an appeal and as a request for attorneys fees.

At the time of the administrative hearing in her case, Ramona was a sixteen (16) year old high school student enrolled in

---

1. The original actions were *Department of Educ. v. Chavez*, Civ. No. 98–942 HG (state appealing hearing officer's conclusions) and *Rodarte v. Department of Educ.*, Civ. No. 98–931 ACK (Rodarte requesting attorneys' fees). They were consolidated by an order of Magistrate Judge Yamashita on March 12, 1999.

2. Significant amendments were made to the IDEA in Pub.L. 105–17, June 4, 1997. Many of the sections containing the basic premises of the statute were renumbered, some taking effect in June of 1997, and others in July of 1998. The Court has tried to use the numbering of sections applicable in May of 1998.

3. This information is currently codified at 20 U.S.C. 1414(d), a section which became effective July 1, 1998.

4. This information is currently codified as well at 20 U.S.C. § 1414(d)(1)(B), a section which became effective July 1, 1998.

the Maui School District. It is undisputed by the parties that Ramona suffered from substantial emotional impairments and life threatening asthma. Between 1993 and 1997, Ramona's asthma was severe enough that she was unable to attend school. As an alternative, her physician authorized home hospital tutoring. During this time Ramona was a regular education student and the accommodations for home hospital tutoring were granted pursuant to § 504 of the Rehabilitation Act of 1973.

For the 1997–98 school year, attempts were made to re-integrate Ramona into classes at the high school so that she could be around other students. It appears from the record and the parties' submissions that Ramona spent part of this school year at Maui High School ("MHS") and part at the Alternative Learning Center ("ALC"). The ALC is located in a separate building than MHS. It is a regular education facility (i.e., teachers are not certified to instruct special education students) for students with serious behavior problems.

It is not entirely clear when Ramona left MHS for the ALC. Her departure was caused by her recurring troubles with her asthma and appears to be linked to the fact that at MHS Ramona had to walk across campus, which aggravated her asthma. The MHS principal testified that there was no way to make an accommodation, such as driving Ramona class to class or having her stay in one room all day long, for a regular education student such as Ramona.

Ramona therefore finished the 1997–98 school year at the ALC. Ramona testified in the administrative hearing that she wanted to attend the ALC. Her mother testified that Ramona's attendance at the ALC was attractive because it would keep Ramona in a classroom setting, as opposed to the isolation of home hospital tutoring. Furthermore, at the ALC, Ramona would not have to walk around as much as at MHS.

In late April of 1998, Ramona's teacher at the ALC, Ms. Terry Sakevitz received journal entries detailing Ramona's wishes to cut and kill herself and her frustration at her family situation. These entries were dated April 21, 1998 and April 22, 1998. On May 10, 1998, Sakevitz submitted a request that Ramona be evaluated for special education services. Tests and evaluations were carried out in May, June, and July of 1998. On August 18, 1998, an IEP meeting was held. Ramona and her mother were present at this meeting and signed the IEP. At the meeting, Ramona was certified as a special education student and an IEP was developed for her.

Despite the pendency of the testing of Ramona, Rodarte requested an administrative hearing on June 29, 1998. In her hearing request, Rodarte claimed that the DOE failed to adequately identify Ramona's disability or evaluate her mental health needs. As stated above, the IEP for Ramona was issued August 18, 1998. The administrative hearing to evaluate the DOE's treatment of Ramona and the sufficiency of the IEP began on August 19, 1998. The hearing was held over five days in August and September of 1998 and was presided over by Valerie Chang, a Chapter 36 Due Process Hearing Officer.

In the administrative hearing, Rodarte argued (1) that the DOE failed to timely identify, evaluate, and provide an IEP for Ramona between 1993 and 1998 as a student with a disability; (2) that the IEP provided August 18, 1998 was incomplete because it lacked a mental health plan or a transition plan; (3) that the Maui High School improperly disciplined Ramona; (4) that the DOE improperly placed Ramona into the Alternative Learning Center ("ALC"); and (5) that the DOE caused Ramona severe emotional distress. Rodarte requested a remedy of compensatory education. *See* Order & Decision of Valerie Chang at 2 (Oct. 27, 1998) ("Chang Order"); Rodarte Memorandum in Support of Summary Judgment ("Rodarte MSJ") at 4–5. In opposition, the DOE

argued that there was no dispute because (1) it never refused educational services requested by Rodarte; (2) it did not fail or refuse to identify, evaluate, and provide Ramona with a FAPE; (3) that there is no jurisdiction over discipline of regular education students or emotional distress in the administrative hearing forum; and (4) that placement of Ramona in the ALC is a bogus issue. Chang Order at 2.

On October 27, 1998, Chang issued an order and decision. Chang found that Ramona's emotional problems emerged sufficiently to trigger the DOE's obligation to identify her for evaluation through the journal entries of April 21–22, 1998. Chang also found that Ramona's IEP lacked a "transition plan" (required for 16 year old students; see 20 U.S.C. § 1414(d)(1)(A)(vii)(II)), failed to appoint a mental health case manager to coordinate Ramona's mental health services, and gave no indication on when the IEP team would reconvene to address the issues. Chang then ordered the following relief:

1. [DOE] shall provide [Rodarte] with a case manager within thirty days of this order.

2. [DOE] shall meet with Ms. Rodarte and Mrs. Chavez to modify the IEP to include a plan for coordinated mental health services consistent with Ms. Rodarte's 7/29/98 mental health evaluation (including psychiatric treatment, family therapy, individual therapy, and medical treatment) within ·thirty days of this order.

3. [DOE] shall meet with Ms. Rodarte and Mrs. Chavez to modify the IEP to include a transition plan for Ms. Rodarte within thirty days of this order.

4. *[DOE] shall provide Ms. Rodarte with three months of compensatory education* in the summer of 1999, so long as Ms. Rodarte still qualifies under IDEA. Such services are to be provided in a manner consistent with Ms. Rodarte's current entitlement under IDEA and shall include education and mental health services.

Chang Order at 7 (emphasis added).

Chang also set forth her findings on which party prevailed on various points. She found that the DOE prevailed on the issue of *when* Ramona's mental and/or emotional problems emerged such that the DOE's obligation to identify Ramona was triggered (late April of 1998). Chang also found that the DOE "substantially prevailed" on the issue of whether compensatory education was appropriate, despite the fact that the DOE did not think any compensatory education was warranted. Finally, Chang found that Rodarte prevailed on the issue of what the "next steps" should be because Chang ordered the above-described additions and amendments to the IEP.

On November 20, 1998, Rodarte filed a complaint for declaratory relief seeking attorneys' fees. This complaint was superceded by her First Amended Complaint, filed January 20, 1999. In her amended complaint, Rodarte sought attorneys' fees and costs under 20 U.S.C. § 1415, based on the premise that she had prevailed in the administrative hearing. Specifically, Rodarte sought: (1) a declaratory judgment that she was the prevailing party in the administrative hearing and that her request for fees and costs is reasonable, (2) that the DOE be directed to pay $16,925 in attorneys' fees and $420 in costs that were incurred during the administrative hearing, and (3) that the DOE be directed to pay fees and costs for the prosecution of the instant action. Nowhere in her complaint does Rodarte appeal the findings or the conclusions of the hearing officer.

On November 27, 1998 the DOE filed a complaint appealing the hearing officer's award to Rodarte of three months of compensatory education. The DOE seeks reversal of the hearing award. *See* DOE Complaint ¶¶ 15–17.

Sometime after Chang's Order was delivered, the DOE complied with the order and provided Ramona with three months of compensatory education in the form of summer school. Additionally, Ramona successfully graduated from Maui High School. *See* Declaration of Matthew C. Bassett (attached to Rodarte Reply to DOE's Motion to Dismiss and for Summary Judgment) ¶ 4–5 (date unknown); *see also* DOE's Motion to Dismiss Plaintiff's Complaint and for Summary Judgment at 7 n. 3.

Rodarte filed a motion for summary judgment on her declaratory judgment action, separate concise statement of facts, and declaration on September 10, 1999.[5] The DOE filed its motion to dismiss Rodarte's complaint for declaratory relief and for summary judgment and a separate concise statement of facts on December 17, 1999. On December 30, 1999, Rodarte filed her opposition to the DOE's motion to dismiss and for summary judgment. The DOE filed its reply in support of its motion to dismiss and for summary judgment on January 13, 2000. The parties have agreed to dispose of all matters through the above cross motions for summary judgment. The Court held a hearing on January 24, 2000.

### STANDARD OF REVIEW

Three standards of review are potentially applicable in evaluating the instant motions.

### I Review of IDEA Administrative Hearing Decisions

■ "[A] court's inquiry in suits brought under [20 U.S.C. § 1415(i)(2)(A) ][6] is twofold. First, has the State complied with the procedures set forth in the [IDEA]? And second, is the [IEP] developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?" *Board of Educ. v. Rowley,* 458 U.S. 176, 206–07, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); *see also Seattle Sch. Dist., No. 1 v. B.S.,* 82 F.3d 1493, 1498–99 (9th Cir.1996). The IDEA statute expressly provides that in performing the above inquiry, courts "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *See* 20 U.S.C. § 1415(i)(2)(B). The amount of deference accorded to the hearing officer's findings increases where they are "thorough and careful." *See Capistrano Unified Sch. Dist. v. Wartenberg,* 59 F.3d 884, 891 (9th Cir.1995). In rendering its decision, a court should keep in mind that the "free appropriate public education" to which a disabled child is entitled under the IDEA "does not mean the absolutely best or 'potential-maximizing' education." *Gregory K. v. Longview Sch. Dist.,* 811 F.2d 1307, 1314 (9th Cir.1987). Finally, the party challenging an administrative ruling has the burden of proof. *Seattle,* 82 F.3d at 1498.

In reviewing findings made during the administrative proceedings contemplated by the statute, the Ninth Circuit has adopted the following observation:

> The traditional test of findings being binding on the court if supported by substantial evidence, or even a preponderance of the evidence, does not apply. This does not mean, however, that the findings can be ignored. The court, in recognition of the expertise of the administrative agency, must consider the

---

**5.** The Court assumes that the declaration of Matthew C. Bassett attached to Rodarte's Motion for Summary Judgment applies to the Rodarte case. Rodarte's attorney, Mr. Bassett, attached a declaration with a case name and number of another client. The facts to which Mr. Bassett attested appeared applica-ble to the instant case, so the Court let the oversight go; the Court admonishes Mr. Bassett to be more careful when cutting and pasting next time.

**6.** The Court substituted the proper section of the IDEA as now codified.

findings carefully and endeavor to respond to the hearing officer's resolution of each material issue. After such consideration, the court is free to accept or reject the findings in part or in whole. Thus, as the district judge here recognized, federal courts cannot ignore the administrative findings. Ultimately, however, the weight to be accorded administrative findings under the IDEA is a matter within the discretion of the federal courts.

*Ash v. Lake Oswego Sch. Dist.,* 980 F.2d 585, 587–88 (9th Cir.1992) (citations omitted).

Finally, although the actions before this Court are for "summary judgment," the fact that they are so captioned does not mean that this Court uses its normal summary judgment standard of review in which it examines whether genuine issues of material fact exist. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As the Ninth Circuit in *Wartenberg,* 59 F.3d at 891 explained:

> Our opinion in *Ojai* explores the difficulty of using a summary judgment framework for what amounts to resolution of conflicting evidence on the facts. In that case, as in many under the [IDEA], disputed issues of fact existed. Likewise, in the case at bar, the mixed question of the cause of [the student's] school failure was disputed. Ordinarily summary judgment could not issue, because of the genuine dispute.

The Court continued, explaining that a,

> puzzling procedural problem arises whenever the district court adjudicates administrative appeals, because the Federal Rules of Civil Procedure do not plainly speak to how such appeals should be handled. It is hard to see what else the district court could do as a practical matter under the statute except read the administrative record, consider the new evidence, and make an independent judgment based on a preponderance of evidence and giving due weight to the

hearing officer's determinations. The district court's independent judgment is not controlled by the hearing officer's recommendations, but neither may it be made without due deference. Because this appears to be what Congress intended under the Act, we conclude that it is the right thing to do, even though it does not fit well into any pigeonhole of the Federal Rules of Civil Procedure. Though the parties may call the procedure a "motion for summary judgment" in order to obtain a calendar date from the district court's case management clerk, the procedure is in substance an appeal from an administrative determination, not a summary judgment.

*Wartenberg,* 59 F.3d at 892.

## II Dismissal for Failure to State a Claim

As for evaluating the DOE's motion to dismiss Rodarte's request for attorneys' fees and costs, a normal Rule 12(b)(6) standard applies. Under Rule 12(b)(6), in deciding a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must accept as true the plaintiff's allegations contained in the complaint and view them in a light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Wileman Bros. & Elliott, Inc. v. Giannini,* 909 F.2d 332, 334 (9th Cir.1990); *Shah v. County of Los Angeles,* 797 F.2d 743, 745 (9th Cir.1986). Thus, the complaint must stand unless it appears beyond doubt that the plaintiff has alleged no facts that would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45 – 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. *See Balistreri,* 901 F.2d at 699; *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–34 (9th Cir.1984).

In essence, as the Ninth Circuit has stated, "[t]he issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims." *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir.1978). The Court must determine whether it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of plaintiffs' claims. *See id.* In reaching this determination, the Court may consider documents that are not specifically referenced in or attached to a complaint so long as their authenticity is not contested and the plaintiff's complaint necessarily relied on them. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir.1998).

### III Summary Judgment

If the Court goes beyond the pleadings to resolve the issue of attorneys fees, the motion is properly treated as one for summary judgment and disposed of as provided in Rule 56. *See* Fed.R.Civ.P. 12(b). Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). The standard for summary adjudication is the same. *See State of Cal. v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *See id.* at 322, 106 S.Ct. 2548. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).

Rather, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *See id.* at 630. At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *See British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505.

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Indeed, "if the factual context makes the nonmoving party's claim *implausible*, that party must come forward with more per-

suasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis in original) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *See T.W. Elec. Serv.,* 809 F.2d at 630–31.

### DISCUSSION

#### I The Parties' Arguments

Rodarte's complaint alleges to be solely for a declaration that she was the prevailing party and for attorneys' fees. Nevertheless, in her motion for summary judgment, Rodarte revisits every argument made in the administrative hearing. The Court assumes this was done in anticipation of the DOE's impending summary judgment brief arguing why the administrative hearing officer erred. Rodarte argues that the DOE violated the IDEA's procedures because it failed to timely identify Ramona as a child eligible for special education, failed to evaluate her properly, improperly disciplined her, and failed to develop an IEP in the statutory manner. Furthermore, Rodarte argues that the IEP eventually developed was not one from which Ramona could meaningfully benefit. Rodarte also argues that Ramona's home hospital instruction and presence in the ALC violated her rights under the IDEA and that awarding compensatory education was appropriate. Finally, Rodarte concludes by arguing that she prevailed in the hearing officer's order and is thereby entitled to attorneys' fees and costs. Quizzically, in her conclusion, Rodarte also argues that Ramona is entitled to additional compensatory education (2 years total).

In its motion for dismissal and for summary judgment, the DOE argues that the hearing officer's decision to grant Rodarte three months of compensatory education was erroneous. The DOE argues that the award was erroneous because a student is only entitled to special education after being determined eligible and Ramona was not determined to be eligible until the May referral for evaluation by Sakevitz. The DOE argues that there was nothing before April of 1998 that would have tipped them off to Ramona's eligibility. The DOE also argues that once this referral was made, a complete evaluation was conducted of Ramona within statutory time limits. The DOE maintains that compensatory education should not be awarded for the time period during which the evaluation is carried out, absent abnormal delay. Finally, the DOE argues that because the hearing officer's award of compensatory education was erroneous, Rodarte is not entitled to attorneys' fees.

This Court will first examine the DOE's motion for summary judgment on the issue of the appropriateness of the award of compensatory education. Second, it will explore whether Rodarte "prevailed" in the administrative hearing, and if so, if the Court should award her for attorneys' fees.

#### II Was the Hearing Officer's Award of Compensatory Education Appropriate?

■ The Court finds that it need not, and indeed, cannot reach a decision on the erroneousness of the hearing officer's award of compensatory education. The DOE's appeal of the hearing officer's award of compensatory education is moot. Although neither party suggested that the doctrine of mootness might bar the DOE's appeal in their summary judgment motions, the issue was raised by Rodarte in her opposition brief. The DOE did not rebut Rodarte's allegation. The Court finds that Rodarte has made a sound point and that the DOE's appeal of this matter is moot and should be dismissed.

Under Article III of the Constitution, federal courts only have jurisdiction over "cases" and "controversies." *See* U.S. Const. Art. III, § 2, cl. 1; *Public Utilities Comm'n v. F.E.R.C.,* 100 F.3d 1451, 1458

(9th Cir.1996). A party must maintain a live controversy at all stages of review, not simply at the date the action is initiated. *See Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 797 (9th Cir.1999) (en banc). "If an action or claim loses its character as a live controversy, then the action or claim becomes 'moot,' and we lack jurisdiction to resolve the underlying dispute." *Id.* at 797–98. "The court must be able to grant effective relief, or it lacks jurisdiction and must dismiss the appeal." *Public Utilities*, 100 F.3d at 1458.

There is no effective relief that this Court can grant to the DOE. It is undisputed that Ramona has already received the hearing officer's award of three months of compensatory education and that she has already graduated from high school. Under nearly identical circumstances, the Seventh Circuit recently found a school's appeal of a ruling under the IDEA moot. *See Board of Educ. of Oak Park & River Forest High Sch. Dist. 200 v. Nathan R.*, 199 F.3d 377, 381–82 (7th Cir.2000) (student already graduated and received the contested compensatory education award); *see also Honig v. Doe*, 484 U.S. 305, 318, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) (although dispute of 24 year old was moot because, after 21, a person is no longer protected, the dispute of a 20 year old who had not yet graduated from high school was not moot). The Seventh Circuit in *Nathan R.* held that "no action this court might take would affect his or the School's rights." *Id.* Similarly, no action that this Court could take could affect Rodarte's or the DOE's rights. Ramona cannot give the three months of compensatory education back. Similarly, because Ramona has graduated, there is no danger that this Court would make additional findings of wrongdoing against the DOE and/or grant Ramona additional compensatory education or other relief.

The instant dispute is also analogous to a Sixth Circuit case where mootness was found after a student graduated from high school. *See Sandison v. Michigan High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026 (6th Cir.1995). A district court granted a preliminary injunction allowing nineteen year old students to participate in cross country meets despite an athletic association rule limiting participation to eighteen year old students. *Id.* at 1028–29. The court found the controversy moot because the track season had ended and the plaintiffs had graduated from high school. *Id.* at 1029–30. As the court said, "the plaintiffs will have no more races to run." *Id.* at 1029. In the same way that the *Sandison* plaintiffs had already completed the activity to which the defendants objected (running in meets during the 1995 season) Ramona has already completed the activity (three months of compensatory education) that the DOE did not want her to have. Additionally, like the plaintiffs in *Sandison*, Ramona's graduation means that the controversy will not arise again between these parties.

The instant case is distinguishable from *Wartenberg*, a Ninth Circuit case in which mootness was not found. The school district in *Wartenberg* appealed a hearing officer's decision that an IEP was inappropriate and that the parents were entitled to reimbursement for monies they spent on private school. *See* 59 F.3d at 889. Before the action reached the appellate court, the child graduated from high school. The parents, opposing the appeal, argued that because the child was no longer protected by the IDEA, the appeal was moot. The court disagreed, finding that the parents' claim for reimbursement of the private school tuition was a live controversy. *Id.* at 890. *Wartenberg* is distinguishable because the court could still grant effective relief by deciding that the school did not owe the parents reimbursement. In contrast, here, the hearing officer's award has already been administered to Ramona. There is no relief that this Court can give.

■ Even if a case or action would otherwise be moot, if it fits into one of a few exceptions, a party can avoid dismissal.

First, there is an exception for cases that are capable of repetition while evading review. *See Public Utilities,* 100 F.3d at 1459. This exception applies only in exceptional circumstances. *Id.* To fit the exception, "a controversy must meet two requirements: (1) the challenged action was in duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* The second exception exists when a party voluntarily ceases its allegedly illegal conduct and there is a reasonable expectation that the wrong will be repeated. *Madison Sch. Dist.,* 177 F.3d at 799. The third exception bars a finding of mootness if a petitioner would suffer "collateral legal consequences" if the actions appealed were allowed to stand. *Id.*

None of the above exceptions to mootness apply to save the DOE's appeal. First, the "capable of repetition" exception is clearly inapplicable because Ramona's graduation precludes the repetition of another controversy over whether the DOE has violated her IDEA rights. *See Sandison,* 64 F.3d at 1030 (similarly holding that graduation of students precluded any repetition of a controversy about running track again). Additionally, the fact that the instant case could not be litigated fully before Ramona's graduation does not mean that it satisfies the exception's requirement that the duration of the action is too short to be litigated. *See Madison Sch. Dist.,* 177 F.3d at 798 (in graduation prayer case, court "acknowledge[d] that [such] cases are difficult to litigate fully," but the fact the one before the court faced such difficulty was inconsequential because some graduation prayer cases are able to be fully litigated). Plenty of IDEA cases are able to be fully litigated. *See, e.g., Ojai Unified Sch. Dist. v. Jackson,* 4 F.3d 1467 (case reached court of appeals without mootness problem). This exception will not help the DOE avoid a mootness determination.

The "voluntary cessation" exception to mootness is also inapplicable. No party in this action voluntarily ceased doing anything. Furthermore, Ramona's graduation means that there is no reasonable expectation that the "wrong" against the DOE will be repeated.

Finally, the "collateral consequences" exception is not applicable either. This exception is usually used to avoid mootness in habeas corpus proceedings where the petitioner has already obtained the relief sought. *See Public Utilities,* 100 F.3d at 1460. A pending question of attorneys' fees for the prevailing party in an administrative hearing, however, does not create "collateral consequences." *See, e.g., United States v. Ford,* 650 F.2d 1141 (9th Cir. 1981). In *Ford,* the court held that the underlying dispute was moot despite the appellants' claim that in order to decide if they were prevailing parties, the court needed to address the merits of the underlying issue. *Id.* at 1143. The court noted that the "question of attorney's fees is ancillary to the underlying action." *Id.* at 1144. Furthermore, the court stated that "the attorney's fees question is to be decided on the record as it exists ... there is no right to review or redetermine any of the issues in the underlying action solely for the purpose of deciding the attorney's fees question." *Id.* at 1144 n. 1.

The holding in *Ford* was followed by the Ninth Circuit in *Cammermeyer v. Perry,* 97 F.3d 1235 (9th Cir.1996). In *Cammermeyer,* the government appealed an adverse ruling under which an Army nurse was ordered reinstated and the Army was enjoined from taking action against her because of her homosexuality. *Id.* at 1237. The appeal became moot when the government reinstated the nurse and rescinded the regulation under which she had been discharged. *Id.* The nurse claimed that the appeal was not moot because she had a claim for attorneys' fees from her victory in the underlying action. *Id.* at 1238. The court disagreed, finding that her claim for attorneys' fees from the underlying action

"does not resuscitate an otherwise moot controversy." *Id.* Instead, the court held that her attorneys' fees claim was "ancillary" and would survive independently. *Id.* In other words, her claim of attorneys' fees did not create collateral consequences which would bar a finding of mootness.

Opinions from other circuits also support the proposition that outstanding claims for attorneys' fees do not trigger the "collateral consequences" exception to mootness. For example, the Fourth Circuit agreed with the *Ford* approach and found a state's appeal of an IDEA award moot despite the fact the parents asserted attorneys' fees and costs claims against the state. *See S–1 v. Spangler,* 832 F.2d 294, 297 & n. 1 (4th Cir.1987). The court noted that the parents' claim "does not avert mootness of the underlying action on the merits." *Id.* Furthermore, the court observed that, "Any other rule would largely nullify the mootness doctrine with respect to cases brought under the myriad federal statutes that authorize fee awards." *Id.* (citing *Flesch v. Eastern Pennsylvania Psychiatric Institute,* 472 F.Supp. 798, 802 (E.D.Pa.1979)). Similarly, the Fifth Circuit held that a suit had become moot on appeal despite the plaintiff's request for attorneys' fees based on his victory in the district court. *Doe v. Marshall,* 622 F.2d 118, 119–20 (5th Cir.1980). The court stated that, "[a] determination of mootness neither precludes *nor is precluded by* an award of attorneys' fees." *Id.* at 120 (emphasis added). *See also Associated Gen. Contractors of Conn., Inc. v. City of New Haven,* 41 F.3d 62, 68 & n. 9 (2d Cir.1994) (finding that case became moot on appeal despite fact that determination of attorneys' fees for prevailing party in lower court had not yet occurred); *Murphy v. Equifax Check Services, Inc.,* 35 F.Supp.2d 200, 202 (D.Conn.1999) ("a claim for attorney's fees does not avert mootness of the underlying action on the merits").

For these reasons, the Court finds the appeal of the hearing officer's award moot. The Court thereby DENIES the DOE's motion for summary judgment and DISMISSES the DOE's appeal of the hearing officer's award. Any decision at this point regarding the appropriateness of the award would be merely advisory and unconstitutional.

Rodarte's counsel, Mr. Bassett, stated at oral argument that his client does not seek further compensatory education. This Court will therefore not consider the question of whether additional compensatory education would be appropriate or even allowed post-graduation.

The Court will now turn to the only remaining question, that of whether Rodarte should be awarded attorneys' fees for the administrative hearing.

## III Attorneys' Fees and Costs

Rodarte moved for attorneys' fees and costs pursuant to 20 U.S.C. § 1415(i)(3)(B) as a parent who was the prevailing party. The statute states,

> In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party.

20 U.S.C. § 1415(i)(3)(B). The Ninth Circuit allows attorneys' fees to be awarded to parents who prevail at an administrative hearing. *Kletzelman v. Capistrano Unified Sch. Dist.,* 91 F.3d 68, 70 (9th Cir. 1996). The statute requires that any fees awarded "shall be based on rates prevailing in the community" and that no "bonus or multiplier may be used in calculating the fees." 20 U.S.C. § 1415(i)(3)(C). Fees may be reduced if the hourly rate exceeds prevailing rates in the community or if the time spent was excessive. *See* 20 U.S.C. § 1415(i)(3)(F)(ii)–(iii). There are also provisions affecting the award of fees if settlements were rejected or if the parent protracted the litigation. *See* 20 U.S.C. § 1415(i)(3)(D), (F). Finally, a "district court's discretion to deny a request for

attorneys' fees is narrow." *Kletzelman,* 91 F.3d at 70.

The Court sees three questions before it: (1) does the mootness of the DOE's appeal affect the award of attorneys' fees and costs, (2) was Rodarte a "prevailing party," and (3) if so, what amount of fees should the Court assess?

## A. How Does the Mootness of the DOE's Appeal Affect the Attorneys' Fees Analysis?

Before this Court can analyze whether Rodarte was the prevailing party in the administrative hearing, it must first decide if the mootness of the DOE's appeal has any effect on the attorneys' fees analysis. Specifically, does the Court need to concern itself with the possibility that who the prevailing party is might have changed if the appeal was not moot? Or, in other words, assuming Rodarte was the prevailing party in the administrative hearing, is the Court obliged, despite the mootness of the appeal, to decide if Rodarte was erroneously the prevailing party?

■ A general rule is that attorneys' fees awarded for victory on the merits must be returned if a recipient loses on the merits on appeal. An appellee is no longer a "prevailing party" when a favorable judgment on the merits in a lower proceeding is reversed on appeal. *See, e.g., Lovell v. Poway Unified Sch. Dist.,* 90 F.3d 367, 373–74 (9th Cir.1996) (directing award of attorneys' fees in district court to be vacated once appellees lost on their appeal); *Turner v. McMahon,* 830 F.2d 1003, 1009 (9th Cir.1987) (same). Similarly, an erroneously granted injunction cannot be the basis for an award of attorneys' fees. *See Ward v. County of San Diego,* 791 F.2d 1329, 1334 (9th Cir.1986). Following these precedents, even if Rodarte was the prevailing party in the administrative hearing, she would not be entitled to attorneys' fees incurred in that hearing if this Court overturned the hearing officer on appeal. Thus, the question before the Court is whether it must now decide the merits of the appeal solely for the purposes of determining if Rodarte should be the prevailing party, despite the appeal's mootness.

■ The Court finds that the answer to this question is no. The Court can find no case stating that if an appeal is moot, a court is nevertheless obliged to investigate the merits in order to determine who should have been the prevailing party for purposes of allocating attorneys' fees. Conversely, the Court has found cases where a party was held to be "prevailing" for the sake of determining attorneys' fees despite the fact that an appeal was moot and dismissed. *See, e.g., Williams v. Alioto,* 625 F.2d 845, 847–48 (9th Cir.1980). In *Williams,* a plaintiff obtained a preliminary injunction against a police practice and the city appealed. The appeal was rendered moot by discontinuation of the practice. The plaintiff moved for attorneys' fees based on his victory in winning the injunction. *Id.* at 847. The Ninth Circuit held that the mootness of the appeal "does not affect the fact that for the pertinent time period appellees obtained the desired relief." *Id.* at 847–48. The court then upheld the district court's award of attorneys' fees to the plaintiff.

The *Ford* case also supports the proposition that once an appeal is found moot, a court need not inquire into the correctness or erroneousness of the underlying court's decision to make an award of attorneys' fees. As discussed above, the court in *Ford* decided that an issue of attorneys' fees would not keep an appeal from becoming moot. *Ford,* 650 F.2d at 1144. The court then held that "there is no right to review or redetermine any of the issues in the underlying action solely for the purpose of deciding the attorney's fees question." *Id.* at 1144 n. 1.

There is also support outside the Ninth Circuit for this proposition. *See, e.g., Dahlem v. Board of Educ. of Denver Public Schools,* 901 F.2d 1508, 1512 (10th Cir. 1990). In *Dahlem,* a school board's appeal

of a preliminary injunction allowing a boy to be a member of the girl's gymnastics team became moot when the boy graduated during the pendency of the appeal. *Id.* at 1510. Nevertheless, the boy filed for attorneys' fees under the premise that he prevailed by winning the injunction. The Tenth Circuit held that the boy still met the test for "prevailing party" and that the inquiry should be made "without regard to whether we think the district court's decision on the underlying merits [was] correct." *Id.* at 1512 (change in original). The court continued, holding that "*a party which achieves the objective of its suit by means of an injunction issued by the district court is a prevailing party in that court, notwithstanding the fact that the case becomes moot.*" *Id.* (emphasis added).

*Bagby v. Beal,* 606 F.2d 411 (3d Cir. 1979), is also supportive. In *Bagby,* the district court found in favor of a terminated employee that her due process rights had been violated. *Id.* at 413. The court ordered her state employer to provide her with a new hearing and attorneys' fees. *Id.* at 413. The state complied with the order, but appealed. *Id.* The court of appeals found that the appeal was moot. *Id.* The court held that it could not revisit the correctness of the underlying decision in order to decide the attorneys' fees question. *Id.* at 414 ("[the state] attempt[s] to make us do indirectly what we cannot do directly by arguing that we must review the merits of the case in order to determine whether the appellee is entitled to receive reasonable attorney's fees [under § 1988]"). *See also Doe v. Marshall,* 622 F.2d at 120 ("[A] determination of mootness neither precludes nor is precluded by an award of attorneys' fees. The attorneys' fees question turns instead on a wholly independent consideration: whether plaintiff is a 'prevailing party.'").

Like the courts in *Ford, Bagby, Williams, Dahlem,* and *Doe v. Marshall,* this Court will not inquire into the correctness of the lower proceeding in order to make a determination about attorneys' fees. Furthermore, this Court does not believe that an important distinction exists between the instant case, where the underlying decision is a full administrative hearing, and the *Williams, Dahlem,* and *Doe v. Marshall* decisions, were the underlying decisions were preliminary injunctions. First, the instant case is analogous to the courts in *Ford* and *Bagby.* These courts refused to inquire into the correctness of underlying decisions when a full trial was held below. Second, the instant case is a stronger one than *Williams, Dahlem,* and *Doe v. Marshall* for the idea that mootness of an appeal has no effect on whom the prevailing party is in the lower proceeding. To receive a preliminary injunction, a plaintiff need only show a likelihood of success. In the instant case, Rodarte had to prove more than a likelihood of success to be victorious and, according to the hearing officer, she did so.

The Court therefore finds that it need not determine who the prevailing party would be in the instant case had the appeal not been moot. Instead, it will simply analyze whether Rodarte meets the test for a "prevailing party" based on the outcome of the administrative hearing. The Court does not believe that this conclusion flies in the face of *Ward* or *Lovell.* In those cases, there was a judgment changing the identity of the prevailing party. In cases where an appeal is moot, however, no such determination has been made.

**B. Did Rodarte "Prevail?"**

 The questions of "prevailing parties" and attorneys' fees in general are analyzed similarly under both the IDEA and 42 U.S.C. § 1988. *Nathan R.,* at 125–26 n. 9. "[A] prevailing party is one that succeeds on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Kletzelman,* 91 F.3d at 70 (quotation marks and alterations omitted). To be considered "prevailing" a plaintiff "must be able to point to a resolution of the dispute

which changes the legal relationship between itself and the defendant." *Id.* In other words, "a civil rights plaintiff must obtain at least some relief on the merits of his claim." *Farrar v. Hobby,* 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). A plaintiff prevails when "actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.* at 111–12.

 Under the above test, Rodarte is certainly a prevailing party from the administrative hearing officer's order. Rodarte sought compensatory education. Rodarte obtained relief on the merits of her claim when the order granted three months of compensatory education. This grant changed the legal relationship between Rodarte and the DOE because the DOE was obliged to provide Ramona with three months of compensatory education that, prior to the order, it was not obliged to give. In other words, the DOE's behavior was modified by the order. It is inconsequential that Rodarte did not obtain all the relief that she sought, such as more compensatory education or additional findings of wrongdoing by the DOE. So long as she obtained "some" or succeeded on a "significant issue," that is sufficient. It is also inconsequential that the hearing officer labeled the DOE as the "substantially prevailing" party on the compensatory education issue. The facts speak for themselves: Rodarte received three months of compensatory education. Accordingly, the Court finds that Rodarte prevailed in the administrative hearing. The Court therefore GRANTS Rodarte's Motion for Summary Judgment for attorneys' fees and costs and refers the determination of the amount of attorneys' fees and costs to the magistrate judge as special master pursuant to Local Rule 53.1.

### CONCLUSION

For the foregoing reasons, the Court DENIES and DISMISSES the DOE's Motion for Summary Judgment and DENIES the DOE's Motion to Dismiss. The Court GRANTS Rodarte's Motion for Summary Judgment and refers the determination of the amount of attorneys' fees and costs to the magistrate judge. IT IS SO ORDERED.