**Stephany VASHERESSE;
David Vasheresse; Susan
Vasheresse, Plaintiff,**

v.

**LAGUNA SALADA UNION SCHOOL
DISTRICT, Defendant**

**No. 99–CV–4756 CW.**

United States District Court,
N.D. California.

March 28, 2001.

Larisa Cummings, Disability Rights Education & Defense Fund, Inc., Berkeley, CA, Sarah E. Clarke, San Francisco, CA, for Plaintiffs.

Thomas F. Casey, III, Miguel Marquez, County Counsel's Office, San Mateo County, Redwood City, CA, for Defendant.

ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

WILKEN, District Judge.

Plaintiff Stephany Vasheresse and her parents David and Susan Vasheresse move for summary judgment on their claims under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. Section 1400 *et seq.*, arguing that the California Special Education Hearing Officer erred in her determination of the issues presented at the administrative hearing below. Defendant Laguna Salada Union School District opposes the motion and cross-moves for summary judgment affirming the hearing officer's decision. The issue is whether the District committed procedural violations and failed adequately to assess Stephany's disabilities, thereby denying her a free and appropriate public education (FAPE). The matter was heard on September 22, 2000. Having considered all of the papers filed by the parties and oral argument on the motion, the Court DENIES Plaintiffs' motion for summary judgment and GRANTS Defendant's motion for summary judgment.

## BACKGROUND

### I. Factual History

Stephany Vasheresse was born in 1988. She lives with her family in Pacifica, which is in the Laguna Salada Union School District. Stephany attended the Oddstad School in the District from kindergarten through third grade. At the end of her third grade school year, her parents enrolled her in the Charles Armstrong School for a summer program. Charles Armstrong is a non-public school that is certified by the State of California. Stephany has attended the Charles Armstrong School since the summer program, completing both the fourth and fifth grades.

When Stephany was in the first grade, her parents became concerned about her difficulty learning to read and the amount of stress she exhibited in completing her homework. At Stephany's first grade parent-teacher conference, Stephany's parents and Ms. Okin, the first grade teacher, dis-

cussed these concerns. (Hearing Transcript (HT) VI, 75:19–26.) In response to these concerns, the District convened a Student Study Team (SST) meeting on June 1, 1995 to consider modifying Stephany's regular education program. The SST recommended that Stephany work in the phonics readers over the summer, listen to a tape of the first book assigned for the second grade year and receive assistance in her transition to second grade. The District also decided that Ms. Okin would teach Stephany's second grade class, giving Stephany continuity and familiarity with her teacher.

A SST follow-up meeting was to convene at the end of the first quarter in Stephany's second grade year but the meeting did not occur. Rather, in the spring of Stephany's second grade year, the school principal, Ms. Karen F. Warner, met with Mrs. Vasheresse, Ms. Warner recommended that Stephany's academic achievement be assessed through the use of screening tests. Stephany's parents consented by signing the Permission To Screen Form. (Student's Exhibit (SX) 503.) The consent form indicates that the screening was for the purpose of obtaining information about Stephany's learning style, strengths and weaknesses. The form also states, "The tests administered will not be for the purposes of referral for special education services. However, you may request such services at a future date." *Id.* Ms. Pat Mevi, Resource Specialist Teacher at Oddstad School, administered to Stephany the Woodcock–Johnson Test of Achievement—Revised.

Within a few weeks from the date of the Vasheresses' consent to have Stephany screened, the test results were completed and reviewed by Mrs. Warner and Ms. Oviatt. Soon thereafter, Ms. Warner reviewed Stephany's test results with Mrs. Vasheresse. As a result of the screening test, Ms. Warner, Ms. Oviatt and Mrs. Vasheresse agreed that Stephany should be referred for an assessment for special education. (HT III, 179:20–23; HT IV, 14:14–20; HT VI, 83:8–12.) They also decided to administer the assessment test the following school year because everyone agreed that more tests would be "stressful to Stephany." (Hearing Decision (HD) 11.)

One day prior to Stephany beginning third grade, the District referred Stephany for the assessment for special education, which her parents consented to on the following day when they signed the referral form. (SX 505.) The referral identified the following areas of possible disability: academic achievement, social/adaptive behavior, psycho-motor development, communication development, intellectual development and projectives.

Approximately one month later, an Individualized Education Plan (IEP) team met to discuss the results of the District's assessment of Stephany with the Vasheresses. The IEP team concluded that Stephany met eligibility criteria for special education because of a significant discrepancy between cognitive ability and reading achievement, and processing disorders in visual and auditory short-term memory. The IEP team developed goals to improve Stephany's reading, written language and math skills and recommended placement in the resource specialist program (RSP). From October, 1996 to June, 1997, the Vasheresses also obtained private tutoring for Stephany to help her develop phonics skills and increase sight vocabulary.

On May 15, 1997, Stephany's parents met with Ms. Oviatt, Ms. Mevi and Ms. Warner to discuss the possibility of retaining Stephany in the third grade. Stephany's parents informed them that Stephany had been assessed by the Charles Armstrong School and that she would be at-

tending the up-coming four-week summer session at her parents' expense of $700.00.

Two weeks later the IEP team met to review Stephany's progress and to make recommendations for the 1997–98 school year. The IEP team developed goals and objectives to improve Stephany's skills in reading and writing.

During the summer of 1997, Stephany attended the summer program at the Charles Armstrong School. In August, 1997, the District attempted to schedule an IEP meeting for the end of August to finalize Stephany's grade placement and RSP allocation but the Vasheresse family was on vacation and unaware of the meeting.

On September 4, 1997, the Vasheresses informed the District that they had enrolled Stephany in the Charles Armstrong School for the 1997–98 school year, and that she would not be attending the Oddstad School. The rescheduled August IEP meeting took place on September 29, 1997. The IEP team revised the goals and objectives related to reading and written language and added goals and objectives to address Stephany's off-task behavior. The District increased its offer of RSP time for Stephany from 225 to 250 minutes per week. The Vasheresses did not consent to the IEP team's goals and objectives. Stephany continued to attend Charles Armstrong for the remainder of the 1997–98 school year.

On May 28, 1998, the District again convened an IEP meeting to discuss the annual academic achievement testing that had been contemplated by both the District and Charles Armstrong. The IEP team developed goals and objectives to improve Stephany's decoding skills, sight vocabulary, reading comprehension and dictation skills. The District offered to provide Stephany with 300 minutes of weekly RSP and to place her in a special day class. A final determination of Stephany's placement was deferred until the parents had an opportunity to observe the special day class. On June 11, 1998, the IEP team reconvened to complete Stephany's annual review. The parents agreed with the goals that were drafted at the May 28, 1998 IEP meeting but did not consent to either placement offer. The parents indicated that they would be seeking public funding for Stephany's private school placement. Stephany remained at Charles Armstrong for the fifth grade, the 1998–99 school year.

Stephany's parents hired Theresa Doyle, Ph.D., a licensed psychologist in private practice, to conduct a neuropsychological assessment of Stephany. Dr. Doyle evaluated Stephany from July 7, 1998 to September 26, 1998. Dr. Doyle found that Stephany has a "significant language-based learning disability which is characterized by a core deficit in phonological awareness, and associated difficulties in word retrieval, language comprehension, and organization of expressive language." (HD 4.)

In addition, the District and Stephany's parents agreed that the District would conduct a speech and language assessment of Stephany. On January 8, 1999, the District's speech and language specialist, Eileen M. Schwind, identified a moderate to severe deficit in language processing. Based on this assessment, Stephany qualified for speech and language services and was referred to San Mateo County Mental Health Services to determine eligibility for mental health services. Stephany's parents also hired Jean Novak, Ph.D., to conduct an independent speech and language consultation. Dr. Novak noted some severe language problems that were identified in the District's 1996 tests that he felt warranted follow-up testing at that time. After reviewing the District's 1996 tests,

Dr. Novak made recommendations about Stephany's learning needs and recommended that she stay in the Charles Armstrong School. (SX 556.)

Stephany's parents enrolled Stephany in the Charles Armstrong School for the summer program following her fifth grade year.

## II. Due Process Hearing

On September 17, 1998, Plaintiffs requested a due process hearing to determine whether the IEPs and placement decision satisfied the District's obligation to provide a free and appropriate public education to Stephany. The due process hearing commenced on May 11, 1999 and included four days in May and two days in June. The parties thereafter submitted post-hearing briefs, and the matter was submitted on June 25, 1999.

## III. Hearing Decision

On August 3, 1999, the hearing officer issued her decision, which was mailed to the parties on the same day. The hearing officer made the following findings:

(1) The District's initial assessment in 1996 adequately assessed Stephany's speech and language;

(2) The District did not commit any procedural errors that resulted in the loss of educational opportunity to Stephany or interfered in the parents' participation in the IEP process;

(3) The District's placement for Stephany in the third grade year, 1996–1997, was designed to meet her needs, provided her with educational benefit and conformed to her IEP;

(4) The District offered Stephany a FAPE for her fourth grade year, 1996–1997;

(5) The District offered Stephany a FAPE for her fifth grade year, 1997–1998;

(6) The District offered Stephany a FAPE for her sixth grade year, 1998–1999.

Based on the foregoing findings, the hearing officer concluded that Stephany was not entitled to:

(1) The costs of attending the summer program at Charles Armstrong;

(2) The costs for the neuropsychological evaluation by Dr. Doyle;

(3) The costs of private tutoring obtained between October, 1996 and June, 1997;

(4) The costs, including transportation, of attending Charles Armstrong School for the 1997–1998 and 1998–1999 school years.

## DISCUSSION

## I. Legal Standards

### A. Summary Judgment

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the nonmoving party, the movant is clearly entitled to prevail as a matter of law. *See* Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Eisenberg v. Insurance Co. of North America,* 815 F.2d 1285, 1288–89 (9th Cir.1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Eisenberg,* 815 F.2d at 1289. The Court must draw all reasonable inferences in favor of the party against

whom summary judgment is sought. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Intel Corp. v. Hartford Accident and Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir.1991).

Material facts which would preclude entry of summary judgment are those that, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Review of Due Process Hearing

The Court conducts an independent review of the record following a due process hearing held pursuant to the IDEA, 20 U.S.C. § 1400 *et seq.*[1] "The traditional test of findings being binding on the court if supported by substantial evidence, or even a preponderance of the evidence, does not apply." *See Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir.1987) (quoting *Town of Burlington v. Department of Educ.*, 736 F.2d 773, 792 (1st Cir.1984)). The Court must, however, give "due weight" to judgments of education policy expressed by the hearing officer. *See id.* (citing *Hendrick Hudson Dist. Bd. of Educ. v. Rowley*, 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)). While the Court should not substitute its own notions of sound education policy for those of the hearing officer, the amount of deference owed is a matter for the Court's discretion. *See id.*

### II. Motion and Cross–Motion for Summary Judgment

There are no material disputed facts here. At the hearing on the motions for summary judgment, the parties stipulated that there is no dispute as to the underlying facts in the record and that there is no need to supplement that record. Thus, while the parties dispute the conclusions that follow from the facts in the record, they do not dispute the essential facts.

Plaintiffs claim that the hearing officer's decision must be overruled on three bases: 1) the District committed procedural violations that resulted in Stephany being denied a free and appropriate public education, 2) the hearing officer ignored evidence that established that the District failed adequately to assess Stephany's disabilities and 3) the District failed to offer Stephany an individualized educational program under IDEA.

### A. Procedural Requirements

Plaintiffs allege that the District engaged in a pattern of procedural violations which infringed on the parents' opportunity to participate in the IEP formulation process and denied Stephany a FAPE as required by the IDEA, for the 1996–1997, 1997–1998, and 1998–1999 school years. The IDEA assures that all disabled children receive a FAPE through individualized education programs. *See* 20 U.S.C. § 1400(c). "While State and local educational agencies, and educational service agencies are responsible for providing an education for all children with disabilities, it is in the national interest that the Federal Government have a role in assisting the State and local efforts to educate children with disabilities." 20 U.S.C. § 1400(c)(6).

To receive federal funds for educating disabled children, States must comply with

---

1. The IDEA was amended in 1997. *See* Individuals with Disabilities Education Act Amendments for 1997, Pub.L. 105–17, 111 Stat. 37 (1997). The 1997 amendments took effect on June 4, 1997, the date of enactment. *See id.* Pub.L. 105–17 § 201, 111 Stat. at 156. The citations in this order refer to the law in effect prior to the 1997 amendments.

the provisions of the Act. 20 U.S.C. § 1412. State and local educational agencies are to guarantee procedural safeguards for disabled children and their parents in the provision of a FAPE by such agencies. 20 U.S.C. § 1415(a). State standards that are not inconsistent with federal standards are also enforceable in federal court. *WG v. Board of Trustees of Target Range School District,* 960 F.2d 1479, 1483 (9th Cir.1992).

In California, each school district must have a written policy and procedure for identifying children with disabilities. *See* Cal. Educ.Code § 56301. Each district shall "provide for the identification and assessment of an individual's exceptional needs and the planning of an instructional program to meet the assessed needs." Cal. Educ.Code § 56302.

Plaintiffs allege that the District's procedural violations hindered Stephany's parents from requesting a referral for a special education assessment.

First, Plaintiffs assert that the five-month delay between the fall of Stephany's second grade year, when the follow-up SST meeting was scheduled to occur but did not, and the meeting held in March, 1996 between Ms. Warner and Mrs. Vasheresse was a procedural violation.

The District established an informal process through the SST for addressing Stephany's educational difficulties soon after they were identified in the spring, 1995. The SST program and recommendations, including the screening process prior to referral for special education assessment, were a part of the District's regular education program. Referrals for assessment for special education are to occur "only after the resources of the regular education program have been considered and, where appropriate, utilized." *See* Cal Educ.Code § 56303. At that time, no written request for a special education assess-

ment had yet been made. California Education Code section 56344 requires that, after an assessment for special education, an IEP program must be developed within fifty days, but that time had not begun to run. Plaintiffs cite no other applicable time requirement.

 Plaintiffs argue that this delay in the SST follow-up meeting from the fall to the spring of her second grade year hindered them from making an earlier request for a referral for a special education assessment. However, Plaintiffs acknowledge that Mrs. Vasheresse met frequently with Stephany's teacher during Stephany's second grade year. There is no evidence that the District failed to respond to any of Stephany's parents' concerns, failed to discuss Stephany's development, or failed to respond to a request for special education. There is no evidence that either of Stephany's parents inquired about referring her for special education or expressed concern about the effect of delaying the SST follow-up meeting. The hearing officer did not err in finding that no procedural violation occurred and that Stephany's parents were not hindered in making a request for a special education referral. (HD 10–11.)

Second, Plaintiffs assert that the District should have provided the Vasheresses with more information about making a request for a referral for special education at the initiation of the screening process in the spring, 1996. Plaintiffs also assert that the District failed to refer Stephany for an assessment for special education at that time, which they claim was a procedural violation. At the March, 1996 meeting between Ms. Warner and Mrs. Vasheresse, Mrs. Vasheresse consented to the District conducting screening tests on Stephany. (HT III, 13–22; District's Exhibit (DX) 6.) Stephany's parents read and signed the Permission to Screen Form.

(SX 503.) This form explicitly states that while the screening tests aren't for "the purposes of referral for special education services ... you may request such service at a future date." *Id.* There is no evidence that Stephany's parents inquired about submitting a request for a referral for special education services. Furthermore, the Vasheresses acknowledged that they were aware that these screening tests were "preliminary tests ... that would determine whether or not [Stephany] required additional testing ..." (HT II, 170:13–15.)

After the screening tests were completed, the parties agreed that Stephany should be assessed to determine if a special education referral was appropriate. Ms. Warner, Ms. Oviatt and Mrs. Vasheresse agreed that the assessment test should occur in the fall. (HT III, 179:20–23; HT IV, 14:14–20; HT VI, 83:8–12.) There was concern "that the end of the school year was near and that further testing was likely to be stressful to Stephany." (HD 11.) The record supports the hearing officer's reasonable decision to reject Plaintiffs' argument that the District should also have completed all assessment tests in April, 1996.

Lastly, Plaintiffs allege that the District failed to complete the assessment process within fifty days from the date of the parents' written consent for assessment, as set forth in Cal. Educ.Code § 56344. Mrs. Vasheresse signed the Referral for Special Education Services on September 4, 1996. (SX 505.) Mrs. Oviatt tested Stephany and provided a summary of the assessment by October 17, 1996. (SX 516.) Clearly, the District met the fifty day time requirement.

The hearing officer did not err, but reasonably concluded that the District "did not commit procedural errors that resulted in the loss of educational opportunity to Stephany or interfered with the Stephany's parents' participation in the IEP process." (HD 11.)

**B. Assessment of Stephany's Disabilities**

■ Plaintiffs claim that the District's assessment of Stephany after her learning disability was identified was inadequate. The hearing officer correctly relied on Cal. Educ.Code § 56320 which specifies that no single procedure shall be used as the "sole criterion for determining an appropriate educational program for an individual with exceptional needs." Cal. Educ.Code § 56320(e). Section (f) requires that the student be assessed in all areas of suspected disability. *See* Cal. Educ.Code § 5632(f). Pursuant to section (g), the assessment must be conducted by persons knowledgeable of the student's disability. *See* Cal. Educ.Code § 56320(g).

In order to provide a complete assessment, the District "must make a full and individual initial evaluation of the child's educational needs and must ensure that the evaluation is made by a multidisciplinary team." *Union School District v. B. Smith,* 15 F.3d 1519, 1523 (9th Cir.1994). In conducting the evaluation, the District should "use a variety of assessment tools and strategies to gather relevant information including information gathered from parents ... [and] the content of the child's individualized education program." 20 U.S.C. § 1414(b)(2). The parties have not cited and the Court is not aware of any case law setting minimum requirements for identifying all areas of suspected disability.[2] The Court finds that the hearing

**2.** While some cases have found that the failure to consult a specialist in the areas of

suspected disability may indicate an improper

officer considered the testimony of all witnesses and made a reasonable judgment based on their testimony and Stephany's educational records. (HD 6–7.)

Plaintiffs assert that the hearing officer committed clear error by finding that the District's initial assessment in 1996 was adequate. Ms. Oviatt conducted most of the assessment and Ms. Mevi administered the tests assessing Stephany's academic functioning.[3] (HD 6.) Witnesses testifying on Stephany's behalf all agreed that the District should have done further testing of Stephany for speech and language disorders. (HT VI, 43:20–44:11.) In particular, Plaintiffs cite the testimony of Dr. Doyle, Dr. Novak, and Ms. Schwind. However, all of Stephany's teachers and assessors who observed her at the time of the initial assessment in 1996 testified "that spoken language was a strength for Stephany." (HD 7.) Stephany's educational records support this finding. The "Referral for Special Education" identified "acquiring reading skills" as the general reason for the referral. (SX 505 and 506.) Also, as the hearing officer noted, speech and language were not identified as reasons for referral. *Id.* Furthermore Ms. Oviatt, who administered the assessment, testified that the District's test included some measure of communication skills and the results did not indicate a need for more comprehensive speech and language assessment. (HD 8.) Despite the assertion by Stephany's witnesses that in hindsight they would have tested Stephany differently, the hearing officer reasonably concluded that, in light of all of the testimony and evidence, the District's initial assessment in 1996 was adequate. (HD 8.)

### C. The District's IEP

Plaintiffs challenge the hearing officer's conclusion that the District provided a program designed to meet Stephany's unique and individual needs, as required by the IDEA, for her third, fourth, and fifth grade years. Plaintiffs argue that because the District inadequately assessed her disabilities, the District did not provide an adequate individualized education plan. The Court finds that, contrary to Plaintiffs' assertion, it is clear from the record that the hearing officer adequately considered all of Stephany's unique and individual needs in light of the District's IEPs and reasonably concluded that the IEP was individually designed to meet Stephany's unique needs.

IDEA requires that "the states ... provide a basic floor of opportunity through a program individually designed to provide educational benefit to the handicapped child." *Gregory K. v. Longview School District,* 811 F.2d 1307, 1314 (9th Cir.1987) (*quoting Hendrick Hudson Dist. Bd. of Ed.,* 458 U.S. at 201, 102 S.Ct. 3034). Providing a free and appropriate public education "does not mean the absolutely best or potential-maximizing education for the individual child." *Id.* The IEP must be "reasonably calculated" to provide an educational benefit. *Id.*

Stephany's IEPs were developed in cooperation with Stephany's teachers, the school psychologist, the RSP specialist and Stephany's parents. (SX 525, 542.) For Stephany's third grade year, the IEP proposed 150 minutes of RSP weekly in her regular third grade class. The IEP included goals to improve Stephany's read-

---

assessment, *see e.g., Union School District,* 15 F.3d at 1523, a specialist was consulted here.

**3.** Plaintiffs did not challenge the manner in which the assessment was administered or the appropriateness of the tests administered. Therefore the requirements in § 56320(b) relating to adequacy of the tests are not in issue.

ing, written language and math skills. (DX 33.) The IEP identified specific strategies: teaching Stephany visualization techniques, phonic rules and strategies, and modeling mental comments and questioning techniques. (HD 13; DX 33.) The IEP also stated that modifications to the regular school program would be required. (DX 33.) While there is a dispute between Plaintiffs' and the District's witnesses about whether Stephany benefited from mainstreaming in the regular classroom, the hearing officer reasonably relied on the testimony of Stephany's teachers and principal who observed her in the classroom. (HD 13.) These witnesses all agreed that Stephany "benefits from placement with regular education peers." (HD 13.) The hearing officer reasonably concluded that the District's IEP for Stephany's third grade year was designed to meet Stephany's unique and individual needs.

For Stephany's fourth and fifth grade years, the IEP proposed 250 and 300 minutes per week of RSP respectively. The goals for both years were very similar, with objectives in reading and written language. (SX 525 and 542.) Reading objectives were to be addressed by improving Stephany's sight vocabulary, phonic awareness and comprehension. (SX 525.) Written language objectives were to be addressed by improving Stephany's ability to name sounds, form letters and diagraphs, and to spell and determine the meaning of contractions. *Id.* The fifth grade IEP included goals of improving Stephany's decoding skills, sight vocabulary, comprehension and dictation skills to address the reading objectives. (SX 542.) The fifth grade IEP also included the results of testing completed by both the District and Charles Armstrong. *Id.* The hearing officer reasonably concluded that the techniques proposed in the IEPs were appropriately tailored to Stephany's unique and individual needs. (HD 19–21.)

The hearing officer reviewed all of the evidence and reasonably concluded that the placement the District offered to Stephany for her third, fourth and fifth grade years was designed to meet her unique and individual needs, provide her with educational benefit, and conform with her IEP. The District's placement offers satisfied the requirement of a free and appropriate public education. Plaintiffs' bases for challenging the hearing officer's decision are without merit. Therefore, Stephany's parents are not entitled to reimbursement for: 1) the private tutoring they obtained between October, 1996 and June, 1997, 2) the costs, including transportation, of Stephany attending Charles Armstrong during the summer, 1997 and the summer, 1999, 3) the costs, including transportation, of Stephany attending Charles Armstrong during the 1997–1998 or 1998–1999 school years, or 4) the costs of neuropsychological evaluation by Dr. Doyle.

CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment (Docket # 13) is DENIED and Defendant's cross-motion for summary judgment (Docket # 14) is GRANTED. The hearing officer's decision is affirmed. Defendant shall recover its costs from Plaintiffs. Judgment shall enter accordingly.