Lisa NOYES, parent of disabled child as defined within the Individuals with Disabilities Education Act, Plaintiff,

v.

GROSSMONT UNION HIGH SCHOOL DISTRICT, Defendant.

No. Civ. 03CV0905–LBLM.

United States District Court, S.D. California.

June 29, 2004.

Thomas S. Nelson, of the Law Offices of Thomas S. Nelson, Michael S. Cochrane, of the Law Offices of Michael S. Cochrane, Poway, CA, for Plaintiff.

Daniel R. Shinoff and Paul V. Carelli IV of Stutz, Artiano, Shinoff & Holtz, San Diego, CA, for Defendant.

## ORDER RE: SUMMARY JUDGMENT MOTIONS

LORENZ, District Judge.

This matter comes before the Court on Plaintiff Lisa Noyes' Motion for Summary Judgment or in the Alternative, Summary Adjudication, and Defendant Grossmont Union High School District's Motion for Summary Judgment. The Court finds these motions suitable for determination on the papers submitted and without oral argument in accordance with Civil Local Rule 7.1(d)(1).

Plaintiff filed this action seeking attorney's fees under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.* ("IDEA"), and now moves for an award of those fees. Defendant also requests summary judgment in its favor, arguing Plaintiff is not a "prevailing party" as defined by *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources,* 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). Defendant alternatively contends Plaintiff is not a "prevailing party" because Plaintiff obtained only *de minimis* results through the parties' settlement agreement.

The Court finds that notwithstanding *Buckhannon,* Plaintiff must be deemed a prevailing party in light of *Barrios v. California Interscholastic Federation,* 277 F.3d 1128 (9th Cir.), *cert. denied,* 537 U.S. 820, 123 S.Ct. 98, 154 L.Ed.2d 28 (2002), *Ostby v. Oxnard Union High,* 209 F.Supp.2d 1035 (C.D.Cal.2002), and policies underlying the IDEA. The Court further concludes Plaintiff received more than *de minimis* results, and is entitled to an award of $7,036.25 in attorney's fees plus $328.33 in expert consultant fees.

### THE IDEA

The IDEA seeks "to ensure that all children with disabilities have available to them a free appropriate public education ['FAPE'] that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A). To implement the IDEA, schools must prepare a written Individualized Education Program ("IEP") for each disabled child. *Id.* § 1414(d); *Ojai Unified Sch. Dist. v. Jackson,* 4 F.3d 1467, 1469 (9th Cir.1993). "[T]he IEP sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will

enable the child to meet those objectives." *Honig v. Doe,* 484 U.S. 305, 311, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); 20 U.S.C. § 1414(d). The statute guarantees parents of disabled children an opportunity to participate in the identification, evaluation, and placement process. 20 U.S.C. §§ 1414(d)(1)(B)(i), 1415(b)(1). Parents who object to their child's "identification, evaluation, or educational placement," or have a complaint regarding the provision of a FAPE for their child, can file an administrative complaint and are entitled to an impartial due process hearing. *Id.* §§ 1415(b)(6), (f)(1); *Ojai,* 4 F.3d at 1469. At the due process hearing, parents have a right to be accompanied and advised by counsel, present evidence, and confront, cross-examine, and compel the attendance of witnesses. 20 U.S.C. § 1415(h). Parents aggrieved by a hearing officer's findings and decision can file a civil action in either federal or state court. *Id.* § 1415(i)(2); *Ojai,* 4 F.3d at 1469. The IDEA also provides for an "award [of] reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B).

### BACKGROUND

Plaintiff Lisa Noyes' daughter, Jennifer Noyes, is a special education student in the Defendant school district with "learning disability" status due to her Attention–Deficit/Hyperactivity Disorder ("ADHD"). (Complaint ¶ 9; Noyes Decl. ¶¶ 1–2.) Jennifer attended ninth grade at Santana High School during the 2001–2002 school year until April 26, 2002. (LeReche Decl. ¶ 2.)

On April 26, 2002, Jennifer hit a physical education staff member after the staff member opened a door, accidentally hitting Jennifer in the arm. (Plt's Exh. 2; Def's Exh. B at 1; Noyes Decl. ¶ 6.) Jenni-

fer was suspended for five days, and recommended for expulsion. (Plt's Exh. 2; Def's Exh. B at 1.) Jennifer's IEP team met on May 1, 2002, and determined Jennifer's act was a manifestation of her disability. (Def's Exh. B at 2; LeReche Decl. ¶ 5.) The IEP team recommended the expulsion process he discontinued. (Def's Exh. B at 2.) At the meeting, school officials informed Plaintiff that Jennifer could not return to Santana High School, and would not be allowed to attend Santana High School for the summer 2002 session. (Noyes Decl. ¶¶ 9, 12.) The IEP team members reviewed the educational placement options for Jennifer. They decided that Jennifer would enroll in an independent study program through June 13, 2002, and then attend summer school at West Hills High School, another school within Defendant's school district. (Plt's Exh. 3; Noyes Decl. ¶¶ 10, 12; Def's Exh. C.) The IEP team determined Jennifer needed to attend an anger management program, and required her family to pay for the service. (Plt's Exh. 3; Noyes Decl. ¶ 13.) Jennifer was not able to complete the program because the family's insurance did not provide coverage. (Plt's Exh. 4 at 1; Noyes Decl. ¶ 13; Def's Exh. E at 1.)

Plaintiff retained Kathleen Edwards, Ed.D., an educational advocate, in May 2002. (Def's Exh. D; Noyes Decl. ¶ 14; Edwards Decl. ¶ 1.) Dr. Edwards requested an emergency IEP meeting to determine Jennifer's placement and the services Defendant offered to Jennifer. (Def's Exh. D.) An emergency IEP meeting was held on June 14, 2002. (Plt's Exh. 4; Def's Exh. E.) At the meeting, Dr. Edwards requested Defendant provide Jennifer counseling services as part of her IEP. (Plt's Exh. 4 at 1; Def's Exh. E at 1; Noyes Decl. ¶ 15; Edwards Decl. ¶ 2.) Dr. Edwards also requested placement in a non-public school, reimbursement for out-of-pocket expenses incurred by Jennifer's parents for therapy since May 1, 2002, an occupational therapy assessment, an assistive technology assessment, and a referral to San Diego County Children's Mental Health Services under state law referred to as "AB 2726." (Plt's Exh. 4 at 4–5; Def's Exh. E at 4–5.)

Defendant declined the request to place Jennifer in a non-public school, explaining that Jennifer could receive counseling services at Santana High school, which was the smallest comprehensive campus with smaller class sizes, and her credits were appropriate for her grade level. (Plt's Exh. 4 at 1; Def's Exh. E at 1.) Defendant also refused to reimburse Plaintiff for Jennifer's therapy fees incurred after May 1, 2002. (LeReche Decl. ¶ 2.) One week after the IEP meeting, Defendant referred Jennifer for an occupational therapy assessment. (Def's Exh. F.) Although Defendant had indicated at the IEP team meeting that counseling services could be offered at Santana High School, it did not provide such services to Jennifer. (Plt's Exh. 4 at 1; Def's Exh. E at 1; Noyes Decl. ¶ 16; Edwards Decl. ¶ 2.) Instead, Defendant referred Jennifer to the San Diego County Children's Mental Health Services for an AB 2726 assessment of her social and emotional status. (Def's Exh. G.)

Jennifer attended summer school at West Hills High School, where she completed five credits of math. (Plt's Exh. 5; Def's Exh. H.) Jennifer met with the occupational therapist during the summer. (Plt's Exh. 5; Def's Exh. H.) At an August 21, 2002 IEP meeting, Plaintiff and Jennifer indicated they wanted Jennifer to return to Santana High School on August 26, 2002. (Plt's Exh. 5; Def's Exh. H.) Jennifer was allowed to return to Santana High School, and the IEP team agreed Jennifer would take two special education classes and one general education class. (Plt's

Exh. 5; Def's Exh. H; LeReche Decl. ¶ 3.) The meeting notes indicate Jennifer was going to be referred to the Safe School's coordinator for anger management classes. (Plt's Exh. 5; Def's Exh. H.) Defendant also referred Jennifer to an assistive technology consultation. (Def's Exh. I.)

The parties dispute whether Jennifer was allowed to take physical education when she returned to Santana High School. Plaintiff maintains Jennifer was not allowed to sign up for physical education classes and was prohibited from "hanging around" the quad area in front of the physical education building. (Noyes Decl. ¶¶ 18, 20; Plt's Exh. 8 at 2.) Marilyn LeReche, Defendant's Director of Special Education, maintains Defendant never prohibited Jennifer from taking a physical education class at any school. (LeReche Decl. ¶ 3.)

The next IEP team meeting was on October 4, 2002. (Def's Exh. J.) The IEP team reviewed the results of the assistive technology assessment, which revealed Jennifer would benefit from a keyboard class. *Id.* at 1. The results of Jennifer's occupational therapy assessment indicated Jennifer needed two sessions of occupational therapy focusing on adequate letter formation. *Id.* The IEP team meeting notes reflect that the County's Children Mental Health Services had notified the Defendant an assessor would be assigned for Jennifer's AB 2726 assessment, but as of the date of the IEP team meeting, Plaintiff had not received any information

from, nor been contacted by the County. *Id.* The notes also indicate Jennifer was going to start anger management classes the following week. *Id.* at 2. The team placed Jennifer in 33% special education classes, and 67% general education classes. *Id.*

On October 16, 2002, Plaintiff's counsel filed a due process complaint with the California Special Education Hearing Office ("SEHO"). (Complaint ¶ 15; Plt's Exh. 8; Def's Exh. K; Noyes Decl. ¶ 22.) The issues presented were whether Jennifer had been denied a FAPE during the previous three years, whether non-public school placement was the appropriate placement for Jennifer in the least restrictive environment, and whether Defendant should provide Designated Instruction and Services ("DIS")[1] counseling to Jennifer instead of a referral to AB 2726 services.[2] (Def's Exh. K.) The SEHO scheduled a due process hearing for November 19, 2002, and assigned Robert Minnich to preside over a mediation with the parties. (Plt's Exh. 7 at 1–2; Def's Exh. L at 1–2.) In her "proposed resolution" submitted to the SEHO, Jennifer requested appropriate compensatory services including social skills instruction, counseling, a multi-sensory reading/writing program, placement in a non-public school, a speech/language assessment by a mutually agreed upon independent assessor, and a Central Auditory Assessment. (Plt's Exh. 8 at 2; Def's Exh. L at 7.)

---

1. California law supplements the IDEA on matters of "related services," providing that they "include, but are not limited to, Designated Instruction and Services." Cal.Code Regs. tit. 5, § 3001(z) (2004); *see Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1527 (9th Cir. 1994). "Designated instruction and services as specified in the individualized education program shall be available when the instruction and services are necessary for the pupil to benefit educationally from his or her in-

structional program." Cal. Educ.Code § 56363(a).

2. Before a student is referred to the county mental health service, the local education agency must provide counseling, psychological, or guidance services to the student, or the IEP team must have documented which services were considered and deemed inappropriate. Cal. Gov't Code § 7576(b)(5).

On November 18, 2002, the parties met in a mediation conference. (Noyes Decl. ¶ 23.) The parties reached an Interim Mediation Agreement, and agreed to take the due process hearing off calendar. (Plt's Exh. 9 at 3; Def's Exh. M at 3.) The settlement agreement provides:

1. District's speech/language reading specialist will conduct assessments in the areas of reading and written language. Upon completion of assessments, an IEP meeting will be held to discuss assessment results and make recommendations for additional support in reading and written language and to address parents' request for compensatory services.

2. District will provide one hour per week of one-on-one counseling sessions through March 2003. A review will be held prior to the end of March 2003, to discuss counseling progress and the need for continued service.

3. District agrees to conduct a speech and language assessment as part of Jennifer's triennial review. The triennial review will be held within 50 days of receipt of signed assessment plan.

4. Jennifer may take P.E. class starting January 2, 2003.

5. Jennifer is currently receiving anger management group sessions one time weekly. Upon completion of the sessions, a coping skills class will be offered and Jennifer may choose to participate.

6. Parties will contact mediator after the IEP meeting referred to in Number 1 in order to determine the need for continued mediation.

7. Parties agree that the hearing will be taken off calendar.

(Plt's Exh. 9 at 5; Def's Exh. M at 5.)

On January 9, 2003, the parties met at an IEP team meeting. (Plt's Exh. 10.)

The meeting notes reflect the assessments performed in accordance with the mediation agreement identified Jennifer as suffering from a continuing specific learning disability in the area of written expression with a disorder in attention. *Id.* In addition, the assessments revealed an auditory processing disorder for reading and spelling. *Id.* Defendant offered reading instruction to address Jennifer's lack of phonemic awareness. *Id.* Defendant also added speech and language services to Jennifer's IEP. *Id.*

Plaintiff was satisfied with the results of the proceedings, and the Interim Mediation Agreement became the Final Mediation Agreement on March 5, 2003. (Plt's Exh. 11; Noyes Decl. ¶ 34; Def's Exh. N.) Plaintiff's counsel sent the Defendant requests for attorney's fees which were rejected. (Complaint Exh. 3; Plt's Exhs. 13, 14.) This suit followed.

### *LEGAL STANDARD FOR SUMMARY JUDGMENT MOTIONS*

Federal Rule of Civil Procedure 56 empowers the court to enter summary judgment on factually unsupported claims or defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material when, under the substantive governing law, it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir.1997).

The party moving for summary judgment bears the initial burden of establish-

ing the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. If the moving party does not have the burden of proof at trial, it may carry its initial burden by "produc[ing] evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., v. Fritz Cos.,* 210 F.3d 1099, 1106 (9th Cir.2000). When the moving party bears the burden of proof on an issue—whether on a claim for relief or an affirmative defense—the party "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in its favor." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986); *see S. Cal. Gas Co. v. City of Santa Ana,* 336 F.3d 885, 889 (9th Cir. 2003).

If the moving party fails to discharge its initial burden of production, summary judgment must be denied and the court need not consider the nonmoving party's evidence, even if the nonmoving party bears the burden of persuasion at trial. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159–60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Nissan Fire,* 210 F.3d at 1102–03. When the moving party carries its initial burden of production, the nonmoving party cannot "rest on mere allegation or denials of his pleading." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the non-movant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (internal quotations omitted); *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Nissan Fire,* 210 F.3d at 1103.

A "genuine issue" of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987). When ruling on a summary judgment motion, the court cannot engage in credibility determinations or weighing of the evidence; these are functions for the jury. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Playboy Enters., Inc. v. Welles,* 279 F.3d 796, 800 (9th Cir.2002). The court must view the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Gibson v. County of Washoe, Nev.,* 290 F.3d 1175, 1180 (9th Cir.2002), *cert. denied,* 537 U.S. 1106, 123 S.Ct. 872, 154 L.Ed.2d 775 (2003). The court is not required "to scour the record in search of a genuine issue of triable fact," *Keenan v. Allan,* 91 F.3d 1275, 1279 (9th Cir.1996), but rather "may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1030 (9th Cir.2001).

### DISCUSSION

### I. Whether Plaintiff Can Be a "Prevailing Party" After Buckhannon

Defendant argues *Buckhannon* forecloses Plaintiff's claim she is a prevailing party. In *Buckhannon,* plaintiffs challenged a West Virginia law requiring all residents of residential board and care homes to be capable of "self preservation;" that is, capable of moving themselves from

imminent danger, such as a fire. *Buckhannon,* 532 U.S. at 600–01, 121 S.Ct. 1835. The plaintiffs sought declaratory and injunctive relief under the Fair Housing Amendments Act of 1988 ("FHAA") and the Americans with Disabilities Act of 1990 ("ADA"). *Id.* While the case was pending, the West Virginia state legislature eliminated the "self preservation" requirement. *Id.* at 601, 121 S.Ct. 1835. The defendants moved to dismiss the case as moot. *Id.* The district court granted the motion. *Id.*

The plaintiffs subsequently requested attorney's fees as the "prevailing party" under the FHAA and ADA, arguing their suit was the catalyst of the defendant's voluntary, legislative change. *Id.* The Court determined the term "prevailing party" as used in federal fee-shifting statutes requires a " 'material alteration of the legal relationship of the parties.' " *Id.* at 604, 121 S.Ct. 1835 (*quoting Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). After reviewing previous rulings, the Court found it had awarded attorney's fees when plaintiffs obtained enforceable judgments on the merits or court-ordered consent decrees. *Id.* Resolving a split among the circuits, the Supreme Court rejected the catalyst theory as a basis for a fee award. *Id.* at 610, 121 S.Ct. 1835. The Court held "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* at 605, 121 S.Ct. 1835. In a footnote, the *Buckhannon* Court indicated "[p]rivate settlements do not entail the judicial approval and oversight involved in consent decrees." *Id.* at 604 n. 7, 121 S.Ct. 1835.

The Ninth Circuit has not yet applied *Buckhannon* to the IDEA. However, this circuit has reviewed the "prevailing party" standard in an ADA case. In *Barrios,* a paraplegic baseball coach was repeatedly prohibited by umpires from coaching on the field during games because he used a wheelchair. *Barrios,* 277 F.3d at 1130–31. The plaintiff's counsel wrote several demand letters to the California Interscholastic Federation ("CIF"), but notwithstanding assurances plaintiff would be allowed to coach, umpires continued to prohibit him from being on the field. *Id.* at 1131–32. Plaintiff filed suit, alleging violations of the ADA and state law. *Id.* at 1132. The parties entered into a settlement agreement that allowed plaintiff to coach on the field and awarded him $10,000 in compensatory damages. *Id.* at 1133. The agreement reserved for the court the determination of whether any party was entitled to an attorney's fee award. *Id.* The court subsequently denied plaintiff's motion for attorney's fees. *Id.*

■] The Ninth Circuit reversed, finding plaintiff was the "prevailing party" because he entered into a legally enforceable settlement agreement against the CIF. *Id.* at 1134. The appellate court found this result compelled by *Fischer v. SJB–P.D. Inc.,* 214 F.3d 1115, 1118 (9th Cir.2000). *Id.* In *Fischer,* the Ninth Circuit stated:

"[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." The [Supreme] Court explained that "a material alteration of the legal relationship occurs [when] the plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." In these situations, the legal relationship is altered because the plaintiff can force the defendant to do something he otherwise would not have to do.

*Fischer,* 214 F.3d at 1118 (*quoting Farrar v. Hobby,* 506 U.S. 103, 111–12, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)) (third alteration in *Fischer* ) (internal citation omitted).

The *Barrios* court determined its conclusion was "unaffected" by *Buckhannon* because the plaintiff did "not claim to be a 'prevailing party' simply by virtue of his being a catalyst for policy change; rather, his settlement agreement affords him a legally enforceable instrument, which under *Fischer,* makes him a 'prevailing party.'" *Barrios,* 277 F.3d at 1134 n. 5. While recognizing the Supreme Court found a plaintiff prevails only by receiving a favorable judgment on the merits or enters into a court-supervised consent decree, the Ninth Circuit found it was "not bound by that dictum, particularly when it runs contrary to this court's holding in *Fischer,* by which we are bound." *Id. Barrios,* therefore, interprets *Buckhannon* as only barring recovery to a plaintiff who was the catalyst for legislative change.

Other circuits, applying *Buckhannon* to the IDEA, have rejected *Barrios* on the grounds that the Ninth Circuit's interpretation of *Buckhannon* "seems to contravene the Supreme Court's unambiguous rejection of private settlement as sufficient grounds for 'prevailing party' status." *Doe v. Boston Pub. Sch.,* 358 F.3d 20, 25 (1st Cir.2004); *see, e.g., John T. ex rel. Paul T. v. Del. County Intermediate Unit,* 318 F.3d 545, 560–61 (3d Cir.2003). Defendant relies on these cases in urging the Court to disregard *Barrios* and conclude Plaintiff is not a prevailing party under *Buckhannon.* The Court declines Defendant's invitation. The doctrine of *stare decisis* obligates this Court to follow *Barrios* even though other circuits have concluded it wrongly interprets *Buckhannon. See Zuniga v. United Can Co.,* 812 F.2d 443, 450 (9th Cir.1987) ("District courts are, of course, bound by the law of their own circuit, and 'are not to resolve splits between circuits no matter how egregiously in error they may feel their own circuit to be.'") (*quoting Hasbrouck v. Texaco, Inc.,* 663 F.2d 930, 933 (1981)). Accordingly, this Court must follow the Ninth Circuit's pronouncement that "a plaintiff 'prevails' when he or she enters into a legally enforceable settlement agreement against the defendant." *Barrios,* 277 F.3d at 1134.

Defendant attempts to distinguish *Barrios* by arguing the case allows a private settlement to confer "prevailing party" status only when a settlement agreement expressly provides for judicial enforcement of the settlement. Defendant further argues that should one of the parties to this case breach the Final Mediation Agreement, the settlement would be administratively enforced.

The Court is not persuaded *Barrios* requires a private settlement to contain provisions for judicial oversight. Rather, *Barrios* noted, "[m]oreover, the parties, in their settlement, agreed that the district court would retain jurisdiction over the issue of attorneys' fees, thus providing sufficient judicial oversight to justify an award of attorneys' fees and costs." *Id.* at 1134 n. 5. The term "moreover" indicates that settlement provision furnished an additional basis for the appellate court's conclusion. What is significant is that the parties entered into a legally enforceable agreement. *See Ostby,* 209 F.Supp.2d at 1042.

This Court's decision to follow *Barrios* is buttressed by *Ostby,* a case presenting facts similar to the instant action. The plaintiff in *Ostby* had learning disabilities, speech and language problems, and serious emotional disturbance. *Id.* at 1036. Her parents retained an attorney to assist them in obtaining a FAPE for the plaintiff. *Id.* at 1037. Counsel filed a formal request for a due process hearing. *Id.* The parties attended a mediation as set forth in the IDEA. *Id.* At the mediation, the parties

entered into a final mediation agreement that was in writing, signed by the parties and the mediation officer assigned to the case, and filed with the SEHO. *Id.* The parties agreed the plaintiff would provide the school district with an itemized statement of attorney's fees and costs. *Id.* at 1037–38. After the parties were unable to reach an agreement on the issue, plaintiff filed suit for attorney's fees and costs under the IDEA in the Central District of California. *Id.* at 1038.

Like Defendant here, the school district in *Ostby* argued plaintiffs were not the "prevailing party" in light of *Buckhannon.* *Id.* at 1039. Judge Matz reviewed *Buckhannon, Barrios,* and a Second Circuit case decided a week after *Barrios, J.C. v. Regional School District 10,* 278 F.3d 119 (2d Cir.2002). *Id.* at 1039–41. In *J.C.,* the Second Circuit concluded plaintiffs are not entitled to attorney's fees when they do not secure a judicially-sanctioned change in the parties' relationship. *Id.* at 1040–41. Judge Matz concluded that "in the Ninth Circuit, unlike in the Second Circuit, a plaintiff who obtains a private settlement against a defendant is a 'prevailing party' for purposes of federal fee-shifting statutes." *Id.* at 1041. The court further held *Barrios* applies to the IDEA, and that the plaintiffs were the prevailing party for purposes of the IDEA's attorney's fees provision. *Id.* at 1041–42.

Finally, even if, as Defendant contends, *Barrios* improperly ignores *Buckhannon's* rejection of private settlement agreements as sufficient for prevailing party status, policies underlying the IDEA militate against applying *Buckhannon* to the IDEA.[3] First, the IDEA encourages early resolution of disputes between the parties, requiring states to provide for voluntary mediation whenever a due process hearing is requested. 20 U.S.C. § 1415(e). Early settlement of IDEA claims benefits the children for whom the statute was enacted. *Akinseye,* 193 F.Supp.2d at 140. "The sooner children receive special education services, the more likely it is that they will achieve the IDEA's goals." *Id.* at 140. Application of *Buckhannon* to the IDEA contravenes the statute's preference for early settlement and is detrimental to the child's educational interests:

> If a parent knows that he cannot be reimbursed for attorneys' fees without a formal judgment, the predictable result is that he will reject any settlement offer from the school district in an attempt to obtain relief at a hearing. Obtaining a favorable judgment from the hearing officer would confer prevailing party status on such a parent, thereby entitling him to attorneys' fees, but the delay caused by rejecting the settlement offer and proceeding with a hearing will postpone the attainment of necessary educational services for the disabled child.

**3.** For additional discussion of these policies and arguments against applying *Buckhannon* to the IDEA, *see* Mark C. Weber, *Litigation Under the Individuals with Disabilities Education Act After* Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Services, 65 Ohio St. L.J. 357 (2004), Jeff Lerner, Comment, *Encouraging Litigation at the Expense of Our Children: The Inapplicability of* Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources *to the Individuals with Disabilities Education Act,* 76 Temp. L.Rev. 381 (2003), and *Akinseye v. District of Columbia,* 193 F.Supp.2d 134, 138–40 (D.D.C.2002), *rev'd on other grounds,* 339 F.3d 970 (D.C.Cir.2003). The Court notes that in *Akinseye,* Judge Walton followed the Second Circuit's holding in *J.C.* that *Buckhannon* applies to the IDEA. *Akinseye,* 193 F.Supp.2d at 137–38, 140. But Judge Walton did so with reservations, emphasizing there are "serious questions about the wisdom of expanding" *Buckhannon* to agency-level private settlement agreements involving IDEA claims. *Id.* at 138–40.

Lerner, *supra*, at 403. For some children, the loss of "valuable and unretrievable time" as their cases wind through the administrative process could mean they "never develop to their full educational achievement level." *Akinseye*, 193 F.Supp.2d at 140.

Second, a goal of the IDEA is to ensure a FAPE for children with disabilities. 20 U.S.C. § 1400(d)(1)(A). To this end, the statute provides a right to counsel during IDEA proceedings, *id.* § 1415(h)(1), and attorney's fees if the plaintiff prevails. *Id.* § 1415(i)(3)(B). These provisions

> reinforce the importance of the entitlement to special education free not just from tuition charges but also from the cost of attorneys' fees to obtain the special education. If the parent has to hire a lawyer to get services for the child, and the district confesses its fault and provides the services, the parent remains out of pocket for the fees. If *Buckhannon* bars fees in that case, the services to the child are anything but free.

Weber, *supra*, at 382–83. Denying parents the right to attorney's fees when they obtain relief through private settlement agreements "will certainly have a chilling impact on the number of children and their parents who will receive legal representation at the agency level and may well reduce the number of cases where early settlement of agency proceedings is achieved." *Akinseye*, 193 F.Supp.2d at 139. Families unable to afford counsel could effectively be denied the benefits of the IDEA: "without legal assistance, the likelihood of receiving the special education services needy children require will be greatly diminished." *Id.* at 139–40. As a result, the IDEA's goal that all disabled children receive a free, appropriate special education will go unmet.

In sum, *Barrios* requires this Court to recognize a private settlement agreement can bestow prevailing party status. The Court is further persuaded by *Ostby*, and its application of *Barrios* to the IDEA. Finally, policy considerations convince the Court that even if, as Defendant suggests, *Barrios* was incorrectly decided, *Buckhannon* should not be applied to the IDEA. Having so concluded, the Court turns to Defendant's next challenge: that Plaintiff is not a prevailing party because she has received only a *de minimis* benefit under the settlement agreement.

## II. *Whether Plaintiff Received Only* De Minimis *Benefits Under the Settlement Agreement*

 The IDEA provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B). A prevailing party entitled to attorney's fees under the IDEA is one who "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.'" *Parents of Student W. v. Puyallup Sch. Dist.*, 31 F.3d 1489, 1498 (9th Cir.1994) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)) (alteration in *Parents of Student W.*); *accord Kletzelman v. Capistrano Unified Sch. Dist.*, 91 F.3d 68, 70 (9th Cir.1996). A plaintiff prevails when "actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar*, 506 U.S. at 111–12, 113 S.Ct. 566; *see Tex. State Teachers*, 489 U.S. at 792, 109 S.Ct. 1486; *Kletzelman*, 91 F.3d at 71; *Parents of Student W.*, 31 F.3d at 1498.

] A plaintiff need not prevail on every issue to obtain fees; it is sufficient to have obtained some relief. *Dep't of*

*Educ. v. Rodarte,* 127 F.Supp.2d 1103, 1117 (D.Haw.2000). However, when a party succeeds on only some of its claims for relief, the court must determine whether the failed claims were related to the successful claims, and, if not, decline to award fees for the hours spent on unrelated claims. *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933. If the plaintiff's success is purely technical or *de minimis,* the plaintiff cannot recover fees as a prevailing party. *Tex. State Teachers,* 489 U.S. at 792, 109 S.Ct. 1486; *Kletzelman,* 91 F.3d at 71; *Parents of Student W.,* 31 F.3d at 1498. "There must be a causal link between the litigation brought and the outcome gained." *Parents of Student W.,* 31 F.3d at 1498; *accord Kletzelman,* 91 F.3d at 71.

█] Defendant maintains the mediation resulted in only *de minimis* relief and Plaintiff is therefore not a prevailing party. In particular, Defendant argues Plaintiff did not obtain the items she sought in the IEP team meetings prior to mediation; in particular, reimbursement for out-of-pocket expenses and non-public school placement. Defendant further contends its agreement to provide assessments and a coping skills class are only *de minimis* relief because Plaintiff did not request these services during an IEP team meeting. Finally, Defendant argues Plaintiff did not prevail on her requests to receive DIS counseling and social skills instruction. The Court will address each of these arguments *seriatim.*

### A. Out-of-Pocket Expenses

The absence of a provision in the settlement agreement requiring Defendant to reimburse Plaintiff for out-of-pocket expenses is irrelevant. Plaintiff did not request reimbursement in her complaint before the SEHO. (Plt's Exh. 8; Def's Exh. K.) That Plaintiff raised the matter during IEP team meetings but chose not to seek

that relief through administrative proceedings does not undermine the benefits Plaintiff obtained through the settlement agreement.

### B. Non-Public School Placement

Defendant argues Plaintiff did not succeed on a primary objective of her complaint; that is, Jennifer's placement in a non-public school. Therefore, Defendant argues, Plaintiff cannot be deemed a prevailing party. The Court disagrees.

█] The Supreme Court has rejected a "central issue test" that would require a party to succeed on the main issue of the litigation. *Tex. State Teachers,* 489 U.S. at 790, 109 S.Ct. 1486; *Phelan v. Bell,* 8 F.3d 369, 373 (6th Cir.1993). Instead, a plaintiff crosses the statutory threshold to prevailing party status by succeeding on any significant issue that achieves some of the benefit she sought in bringing suit. *Tex. State Teachers,* 489 U.S. at 791–92, 109 S.Ct. 1486; *Gross ex rel. Gross v. Perrysburg Exempted Village Sch. Dist.,* 306 F.Supp.2d 726, 731 (N.D.Ohio 2004). "[T]he *degree* of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all." *Tex. State Teachers,* 489 U.S. at 790, 109 S.Ct. 1486. In *Gross,* Judge Carr applied these principles and found a plaintiff can be a prevailing party even when she requests, but does not obtain, non-public school placement. *Gross,* 306 F.Supp.2d at 733. Although *Gross* is not binding authority, the Court finds it persuasive.

In *Gross,* plaintiff requested and received a due process hearing to determine the services and accommodations required to ensure her autistic son received a FAPE. *Id.* at 728. Plaintiff sought to have her son transferred, at the school district's expense, to an out-of-district school for autistic students. *Id.* at 729. In the alter-

native, plaintiff requested the school district be ordered to develop an IEP that met her son's needs. *Id.* The hearing officer determined the school district had failed to provide plaintiff's son a FAPE, and ordered the school district to provide several services. *Id.* at 729–30. The officer did not require placement in the out-of-district school. *Id.* at 730. Plaintiff later filed suit in federal court seeking attorney's fees. *Id.* at 728.

The school district argued plaintiff should be denied attorney's fees because the hearing officer did not require placement in an out-of-district school. *Id.* at 730, 732. Judge Carr disagreed, finding "ill-advised" a rule requiring plaintiffs to be successful in achieving their pre-hearing requests to be considered the prevailing party. *Id.* at 732. The court reasoned that plaintiff had attained significant success regarding a majority of her claims and requests, and the hearing officer issued mandates that "markedly changed the legal relationship between the parties." *Id.*

Judge Carr also cited several policy reasons against requiring plaintiffs to prevail on each of their pre-hearing requests. *Id.* at 732–33. First, such a rule would "undercut the purpose of the fee-shifting provision and contravene established precedent" holding a plaintiff succeeds insofar as the school's IEP is shown to be inappropriate even though the administrative hearing officer and the courts are not persuaded to order plaintiff's preferred alter-

native. *Id.* at 732. Second, requiring parents to recover on every request could force them or their counsel "to request less than optimal results or to refrain from requesting alternative solutions to redress their children's situations." *Id.* at 733. The child's interests would not be served because "[t]he opportunity to obtain fees, rather than being an inducement to seek what is best for the child, could create a conflict of interest between parent and child or counsel and client." *Id.* Finally, Judge Carr noted that denying fees on the basis of a failed demand for relief "would defeat the purpose of holding interactive, dynamic due process hearings in which [hearing officers] are charged with assessing the parties' evidence and arguments and crafting the best solution for educating children with disabilities." *Id.*

As in *Gross,* the Plaintiff here filed an administrative complaint to ensure Jennifer would receive a FAPE. That Jennifer was not placed in a non-public school is of no moment when one considers the relief Plaintiff obtained: Jennifer was given reading and written language assessments, and a speech and language assessment. (Plt's Exh. 10; Noyes Decl. ¶ 24.) She also received one-on-one counseling sessions through March 2003 and a commitment to discuss counseling progress and the need for continued service. (Plt's Exh. 11 at 5; Def's Exh. N at 5.) Finally, Jennifer was offered participation in a coping skills class, and allowed to attend physical education.[4] (Plt's Exh. 11 at 5; Def's Exh.

---

4. Plaintiff's administrative complaint maintains she had been prohibited from taking physical education. (Plt's Exh. 8 at 2; Def's Exh. L at 7.) At the mediation, Defendant agreed to allow Jennifer to take physical education beginning in January 2003. (Plt's Exh. 9 at 5; Def's Exh. M at 5.) This suggests Plaintiff prevailed on the issue. However, Defendant has submitted the declaration of its Special Education Director wherein she states

Jennifer was never prohibited from taking physical education. (LeReche Decl. ¶ 3.)

The Court questions whether the Special Education Director's declaration is sufficient to raise a triable issue of material fact as to whether Plaintiff prevailed on the physical education issue. The record reveals Jennifer's ability to take physical education was contested in the administrative proceedings, suggesting the Defendant's agreement to allow her to enroll in that class signifies Plain-

N at 5.) These requirements materially changed the legal relationship between the parties; the Defendant became obligated to provide assessments and services it had not previously given. Having obtained this relief, Plaintiff "should not be decreed to have failed because [her] grasp did not match [her] reach." *Gross*, 306 F.Supp.2d at 732.

The Court notes the benefits received through the settlement agreement are underscored by what happened after the parties entered into that agreement. In particular, the assessments performed pursuant to the settlement revealed: (1) Jennifer lacked phonemic awareness in the reading process and required special instruction; and (2) Jennifer had a previously undiagnosed disability in speech and language. (Noyes Decl. ¶ 25; Plt's Exh. 10.) In short, after the settlement, Jennifer's IEP could be modified to ensure she received a FAPE.

### C. Assessments and Coping Skills Instruction

Defendant maintains Plaintiff should not be considered the prevailing party by virtue of Defendant agreeing to provide a reading and written language assessment, a speech and language assessment, and coping skills instruction because Plaintiff did not raise these items in an IEP team meeting. Defendant notes Plaintiff could have requested these services in the October 4, 2002 meeting as she was already represented by counsel at that time. According to Defendant, the agreement gives Plaintiff at most a *de minimis* benefit because there was no dispute between the parties regarding the provision of those services prior to the mediation. In sup-

port of its argument, Defendant cites *Payne v. Board of Education*, 88 F.3d 392 (6th Cir.1996). The Court is not persuaded.

In *Payne*, the plaintiff filed a request for a due process hearing under the IDEA to address whether the school system was providing plaintiff with a FAPE. *Payne*, 88 F.3d at 395. Several months later, a multidisciplinary team developed an IEP for the plaintiff. *Id.* The administrative law judge assigned to the hearing subsequently dismissed the hearing request without reaching the merits of the claim. *Id.* Plaintiff then filed a complaint under the IDEA seeking attorney's fees. *Id.* The district court granted the school district's motion for summary judgment, finding the plaintiff did not qualify as a "prevailing party." *Id.* at 395–96. The Sixth Circuit affirmed, finding the plaintiff did not obtain the IEP through an enforceable judgment, consent decree, or settlement. *Id.* at 398–99. The appellate court also held plaintiff's request for a due process hearing was not a necessary and important factor in reaching the compromise IEP. *Id.* at 399–400.

*Payne* is distinguishable from the circumstances presented in this case. Here, the parties entered into an enforceable settlement agreement. Further, Defendant's argument improperly shifts the burden onto the parents to know what assessments exist and are available in the Defendant school district. The IDEA squarely places that burden on the Defendant, requiring school districts to "make 'a full and individual evaluation of the child's educational needs' " and ensure the evaluation is made by a multidisciplinary team.

tiff prevailed. In any event, even assuming there are triable issues of material fact as to whether Jennifer had been denied the opportunity to take physical education, the Court's conclusion would not be affected. For the

reasons discussed in this section, the Court finds Plaintiff to be a prevailing party because of the other relief obtained through the settlement agreement.

*Smith,* 15 F.3d at 1523 (*quoting* 34 C.F.R. § 300.531); *accord Vasheresse v. Laguna Salada Union Sch. Dist.,* 211 F.Supp.2d 1150, 1157 (N.D.Cal.2001). To accomplish this task, the IDEA requires the IEP team to include someone from the school district who is knowledgeable about the various assessments and programs available:

> The term "individualized education program team" or "IEP Team" means a group of individuals composed of—
>
> . . . . .
>
> (iii) at least one special education teacher, or where appropriate, at least one special education provider of such child;
> (iv) a representative of the local education agency who—
>
> > (I) is qualified to provide, or supervise the provision of, specially designed instruction to meet the unique needs of children with disabilities;
> > (II) is knowledgeable about the general curriculum; and
> > (III) is knowledgeable about the availability of resources of the local education agency.

20 U.S.C. § 1414(d)(1)(B)(iii)-(iv); *see also* 34 C.F.R. § 300.344 (discussing requirements for IEP team members).

Finally, Defendant has not cited any authority buttressing its position the IDEA requires parents to exhaust all claims by presenting them in an IEP meeting before filing an administrative complaint. Significantly, this Court has not found, and Defendant has not cited, any binding authority requiring informal presentation of issues prior to filing an administrative complaint. To the contrary, the IDEA allows parents or guardians to bring a complaint concerning "*any matter relating to* the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6) (emphasis added); *Kletzel-*

*man,* 91 F.3d at 69. The Court is also mindful of the Ninth Circuit's admonition that "[w]hen Congress provides a 'detailed exhaustion scheme,' courts generally lack discretion to add additional exhaustion requirements to the scheme." *Porter v. Bd. of Trustees,* 307 F.3d 1064, 1070 (9th Cir. 2002), *cert. denied,* 537 U.S. 1194, 123 S.Ct. 1303, 154 L.Ed.2d 1029 (2003). The IDEA contains a "detailed exhaustion scheme," requiring—albeit with some exceptions— parents to exhaust administrative proceedings prior to seeking judicial review. *Garro v. Connecticut,* 23 F.3d 734, 737 (2d Cir.1994); *Ass'n for Community Living in Colo. v. Romer,* 992 F.2d 1040, 1043–44 (10th Cir.1993). Having considered this caselaw and the Defendant's responsibility to include in Jennifer's IEP team individuals knowledgeable about the school district's special education program and resources, the Court finds the Defendant's agreement to provide reading and written language assessment, speech and language assessment, and coping skills instruction support a finding Plaintiff is the prevailing party.

## D. DIS Counseling

Defendant contends Plaintiff did not prevail on her request for DIS counseling because Defendant did not agree to provide such counseling under the settlement. Defendant maintains its agreement to provide one hour per week of one-on-one counseling sessions does not render Plaintiff the prevailing party because it had already been providing anger management group counseling, and had offered counseling services at Santana High School. According to Defendant, it never changed its position regarding counseling and maintains if there had been a problem with the frequency of the counseling services, it should have been raised at an IEP team meeting. A review of the record undermines Defendant's argument.

Dr. Edwards requested counseling for Jennifer at the June 14, 2002 IEP team meeting. (Plt's Exh. 4 at 1; Def's Exh. E at 1; Edwards Decl. ¶ 2; Noyes Decl. ¶ 15.) The notes reflect Santana. High School's principal indicated counseling services would have been available to Plaintiff had the staff been aware of Jennifer's concerns regarding being teased. (Plt's Exh. 4 at 1; Def's Exh. E at 1.) The record reflects the Defendant did not provide any counseling subsequent to that IEP, but instead referred Jennifer for assessment by the San Diego County Children's Mental Health Services under AB 2726. (Plt's Exh. 5; Def's Exhs. G, H; Noyes Decl. ¶ 16; Edwards Decl. ¶ 2.) The Court also is not persuaded by Defendant's suggestion it provided the necessary counseling services by enrolling Jennifer in an anger management class. Defendant has not presented any evidence or argument indicating that class was equivalent to or an appropriate substitute for the counseling. Plaintiff therefore prevailed on this issue.

### E. Social Skills Instruction

Defendant argues Plaintiff did not prevail on her request Jennifer receive social skills instruction. The Court agrees the mediation agreement does not specifically provide for those services. Nevertheless, the Court declines to find Plaintiff is not a prevailing party in light of all the other relief Plaintiff obtained.

### F. Summary

In brief, the Court finds the settlement agreement conveys prevailing party status on the Plaintiff because it materially altered the legal relationship between the parties. Although Defendant did not agree to provide social skills instruction or place Jennifer in a non-public school, to be considered a prevailing party, a plaintiff need not prevail on every issue—it is sufficient that "some" relief was obtained. *Rodarte*, 127 F.Supp.2d at 1117. Here, De-

fendant committed to providing several of the services sought in the administrative complaint. The issues on which Plaintiff prevailed are intertwined with the parts on which she did not succeed; therefore, it is not possible nor necessary to parse her attorney's fees between successful and unsuccessful claims. Plaintiff's degree of success is sufficient to support an award of attorney's fees as requested with the adjustments set forth below.

### III. *Amount of Fees*

█] The amount of attorney's fees awarded under the IDEA is determined using the lodestar calculation—the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *See Hensley*, 461 U.S. at 433, 103 S.Ct. 1933; *Gross*, 306 F.Supp.2d at 736. The IDEA requires any attorney's fees awarded to "be based on rates prevailing in the community" and provides that "[n]o bonus or multiplier may be used in calculating the fees." 20 U.S.C. § 1415(i)(3)(C); *Rodarte*, 127 F.Supp.2d at 1114. The court may reduce fees if counsel's hourly rate exceeds prevailing rates in the community or if the time spent was excessive, redundant, or otherwise unnecessary. 20 U.S.C. § 1415(i)(3)(F)(ii)-(iii); *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933; *Rodarte*, 127 F.Supp.2d at 1114; *Gross*, 306 F.Supp.2d at 736. The party requesting attorney's fees "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437, 103 S.Ct. 1933.

### A. Hourly Rate

"The proper reference point in determining an appropriate fee award is the rates charged by private attorneys in the same legal market as prevailing counsel." *Trevino v. Gates*, 99 F.3d 911, 925 (9th

Cir.1996) (internal quotations omitted). In determining whether the fees requested are reasonable, the court may consider the following factors: (1) the time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) time limitations imposed by the client or the circumstances; (7) the amount involved and the results obtained, (8) the experience, reputation, and ability of the attorneys, (9) the nature and length of the professional relationship with the client, and (10) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975).[5] Not all of these factors are always relevant when determining the reasonableness of an attorney's fees award. *See McGinnis v. Ky. Fried Chicken of Cal.,* 51 F.3d 805, 809 (9th Cir.1994) ("A judge may consider all the factors without talking about all of them, because most are not matters on which anything is at issue or needs to be said.")

Here, Plaintiff was represented by Michael Cochrane and Thomas Nelson, and requests a billing rate of $300 per hour for both attorneys. Plaintiff supports the hourly rate with the declarations of attorneys who specialize in special education law, N. Jane DuBovy, Jane Fleischer Reid, and Roberta S. Savage.[6]

Defendant responds the requested hourly rate is excessive and should be lowered to $225 per hour. In support for the reduction, Defendant argues this was not a complex litigation but rather a simple negotiation process. Defendant further contends Plaintiff's counsel specializes in this area of law, and has become efficient in simultaneously prosecuting multiple special education matters.

■ The DuBovy, Reid, and Savage declarations indicate the current billing rate for attorneys specializing in special education varies from $225 to $350 per hour. (*See* DuBovy Decl. ¶ 3 ($300 per hour); Reid Decl. ¶ 3 ($300–350 per hour); Savage Decl. ¶ 11 ($225 per hour since July 2002 increasing to $300 per hour on January 1, 2004); Savage Decl. ¶¶ 13–14 (billing rates of partners in her firm increasing from $250 per hour to $350 per hour after January 1, 2004).) Like the declarant attorneys, Messrs. Cochrane and Nelson specialize in this area of law. (Cochrane Decl. ¶ 4; Nelson Decl. ¶ 4) The Court disagrees with Defendant's suggestion counsel's specialization commands a lower hourly rate because their "formulaic practice of law is almost boilerplate." (Def's Oppo. to Plt's Mtn. for Sum. Judg't at 8.) Each action is unique, involving children with different disabilities, and thereby requires individualized analysis as to the needs of the child, and what services the school district is providing and can provide to the child. Further, the Ninth Circuit has described special education cases as involving "a complex web of federal and state statutes and regulations." *Ojai,* 4 F.3d at 1469; *see also Gross,* 306 F.Supp.2d at 736 (noting "the complexity and uniqueness of IDEA cases and the different ways the same cases can apply to individual circumstances"). Finally, the

---

**5.** The Court notes that *Kerr* cited two additional factors that the Supreme Court has deemed irrelevant: whether the fee is fixed or contingent; and the "undesirability" of the case. *City of Burlington v. Dague,* 505 U.S. 557, 563, 566–67, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992); *Davis v. City & County of San Francisco,* 976 F.2d 1536, 1546 n. 6 (9th Cir.1992), *vacated in part on other grounds,* 984 F.2d 345 (9th Cir.1993).

**6.** Plaintiff submitted these declarations late, together with a request they be accepted for filing *nunc pro tunc* to April 21, 2004. Having received no opposition and good cause appearing, Plaintiff's request is **GRANTED**.

declarations of other special education attorneys supports a finding counsel's hourly rate is reasonable. Accordingly, the Court will award counsel $300 per hour, and next turns to the number of hours billed.

### B. Number of Hours Expended

A court ruling on an attorney's fees motion may require the requesting party to produce records sufficient to provide "a proper basis for determining how much time was spent on particular claims." *Hensley*, 461 U.S. at 437 n. 12, 103 S.Ct. 1933 (*quoting Nadeau v. Helgemoe*, 581 F.2d 275, 279 (1st Cir.1978)). Defendant challenges three time entries as unreasonably duplicative. First, Defendant contends the 3.4 hours spent by Mr. Nelson reviewing the file on October 16, 2002 is duplicative of the time Mr. Cochrane spent on September 12, 16, and October 16, 2002. Defendant next challenges the 2.1 hours Mr. Nelson spent on October 30 finalizing his review of the file as duplicative of the work he had done on October 16, 2002. The Court disagrees.

██ The Ninth Circuit has recognized that " 'the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort.' " *McGrath v. County of Nev.*, 67 F.3d 248, 255 (9th Cir.1995) (*quoting Kim v. Fujikawa*, 871 F.2d 1427, 1435 n. 9 (9th Cir. 1989)). A reduction of fees "is warranted only if the attorneys are *unreasonably* doing the *same* work. An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." *Johnson v. Univ. College*, 706 F.2d 1205, 1208 (11th Cir.1983); *see Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 785 (9th Cir.1986). Having reviewed the time records, the Court finds no basis for concluding Mr. Nelson's review of the file was duplicative of Mr. Cochrane's work.

To the contrary, it was imperative for him to review the case to properly represent Plaintiff at the due process hearing. Therefore, the Court will award the hours Mr. Nelson spent reviewing the file on October 16, 2002, and October 30, 2002.

Defendant's third challenge is to 0.30 hours Mr. Nelson spent on November 18, 2002 "review[ing] most recent IEP at mediation; conf. w/ parent." (Plt's Exh. 16 at 2.) Defendant's objection is well-founded. Counsel's time records indicate Mr. Nelson charged 3.10 hours on that date to "[a]ttend mediation; settle case." *Id.* Thus, it appears Mr. Nelson was billing for reviewing the IEP while simultaneously billing for his attendance at the mediation. This is double billing, and impermissible. Accordingly, the Court will deduct $90.00 (0.30 hours multiplied by $300 per hour) from the fee award.

██ Although not raised by Defendant, the Court finds there are additional reasons to reduce Plaintiff's attorney's bills. In particular, counsel charged: (1) 0.20 hours on September 16 to "[s]et up client file;" (2) a total of 1.23 hours on October 21 to prepare and assemble the exhibits and cover sheet for the due process hearing; and (3) .80 hours on October 22, 2002 to assemble the exhibit packet. *Id.* at 1–2. Counsel billed this time at the post-bar intern rate of $85.00 per hour. *Id.* As described, these tasks appear to have been easily delegable to non-professional assistance and therefore legal service rates are not applicable. *See Mogck v. Unum Life Ins. Co. of Am.*, 289 F.Supp.2d 1181, 1193 (S.D.Cal.2003) (holding that creating and reorganizing files, preparing tables of contents and tables of authorities, and preparing indexes were paralegal/secretarial tasks). The Court finds a paralegal rate of $50.00 per hour for these tasks is reasonable, and will reduce the fee amount requested to reflect that rate.

## C. Dr. Kathleen Edward's Fees

█ Plaintiff seeks to recover fees paid to Dr. Edwards. Defendant maintains Dr. Edwards' consultation services are not compensable under *Z.A. v. San Bruno Park School District*, 165 F.3d 1273 (9th Cir.1999). The Court disagrees because *Z.A.* is inapposite. In *Z.A.*, an attorney who was not licensed in California sought attorney's fees for representing a student in a special education administrative proceeding. *Z.A.*, 165 F.3d at 1274. The Ninth Circuit held counsel was not entitled to recover his attorney's fees. *Id.* at 1276. The appellate court reasoned that if a person is not licensed to practice law in a particular forum, he "cannot charge, or receive attorney's fees for such services under penalty of criminal law." *Id.*

Here, Dr. Edwards did not represent Plaintiff at the mediation. Instead, Plaintiff requests fees Dr. Edwards charged for consulting with Plaintiff's counsel in the due process proceedings. (Edwards Decl. ¶ 3.) The parties have not cited, nor has this Court found, any Ninth Circuit authority holding these fees can be awarded under the IDEA. The Third Circuit, however, has concluded expert consultant fees are compensable. *Arons v. N.J. State Bd. of Educ.*, 842 F.2d 58, 62 (3d Cir.1988); *see also Connors v. Mills*, 34 F.Supp.2d 795, 808 (N.D.N.Y.1998) ("That is not to say that Mrs. Arons cannot collect her fees as an educational consultant or as a

witness."). The Court agrees with this authority, and finds an award of expert consultation fees furthers the policies underlying the IDEA discussed *supra* Section I. Plaintiff is therefore awarded the $328.33 in fees Dr. Edwards charged for consulting with counsel concerning the due process proceedings.[7] (Plt's Exh. 15.)

## IV. *Attorney's Fees in this Action*

Plaintiff also requests an award of attorney's fees incurred by filing this case. Having prevailed on her claim for attorney's fees from the administrative proceedings, Plaintiff is entitled to recover her reasonable attorney's fees for this action. *See Ojai*, 4 F.3d at 1480; *Barlow–Gresham Union High Sch. Dist. No. 2 v. Mitchell*, 940 F.2d 1280, 1286 (9th Cir. 1991). Plaintiff may file a motion under Rule 54(d) properly documenting this request after judgment is entered.

### CONCLUSION

Having reviewed the parties' briefs, the record, applicable law, and good cause appearing, **IT IS HEREBY ORDERED:**

1. Plaintiff's motion for summary judgment is **GRANTED.**

2. Plaintiff is awarded attorney's fees in the amount of $7,036.25, and expert consultant fees in the amount of $328.33.

3. Defendant's motion for summary judgment is **DENIED.**

---

7. The Court notes Plaintiff's moving brief asserts Dr. Edwards spent 5.28 hours consulting with counsel. Dr. Edwards' declaration, however, attaches an invoice requesting payment for 3.28 hours. (Plt's Exh. 15.) The two-hour discrepancy can be explained by reviewing the exhibits attached to the Complaint. The Complaint includes a second invoice from Dr. Edwards reflecting another 2 hours of services rendered on June 14, 2002. (Complaint Exh. 5.) On that date, Dr. Edwards attended an IEP team meeting for Jennifer. (Plt's Exh. 4; Def's Exh. E; Edwards Decl. ¶ 2; Noyes Decl. ¶ 15.) The IDEA precludes an award of attorney's fees for time spent at IEP team meetings unless the meetings are convened as a result of the administrative proceedings or judicial action. 20 U.S.C. § 1415(i)(3)(D)(ii). In light of this statutory prohibition, the Court declines to award Plaintiff Dr. Edward's fees for the two hours she spent at the June 14, 2002 IEP team meeting because the meeting was not held as a result of administrative proceedings or judicial action.

4. Plaintiff's request to file the declarations of Roberta S. Savage, Jane Fleischer Reid, and N. Jane DuBovy is **GRANTED**. The Clerk of the Court is directed to file these declarations *nunc pro tunc* to April 21, 2004.

5. The Clerk of the Court is directed to enter judgment in accordance with this order.

**IT IS SO ORDERED.**